Shelby Dee Baker sued his employer, Wal-Mart Stores, Inc., to recover workers' compensation benefits. After conducting a trial, the circuit court entered an order finding Baker permanently and totally disabled and awarding benefits accordingly. Wal-Mart appealed.
The Alabama Workers' Compensation Act provides that "[i]n reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." Ala. Code 1975, § 25-5-81(e)(2). In interpreting the term "substantial evidence," the Supreme Court of Alabama has stated:
 "[U]nder the applicable standard of review, we will not reverse the trial court's finding of fact if that finding is supported by substantial evidence — if that finding is supported by `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" *Page 521 
West v. Founders Life Assurance Co. of Florida, 547 So.2d 870,871 (Ala. 1989).
The record indicates that Baker had worked as a truck driver for approximately 30 years. Wal-Mart hired Baker as a truck driver in April 1995. On January 5, 1996, Baker was injured when he slipped while attempting to climb out of his truck. He landed on the ground, on his back. He was treated in an emergency room, and he later underwent surgery on his back to correct a herniated disc.
Baker's surgery did not correct the injury to his back, but his doctors concluded that he was not a candidate for further surgery. His surgeon referred him to Dr. Roger W. Kemp for management of continued back pain. Dr. Kemp concluded that Baker had "failed back syndrome" and determined that Baker had reached maximum medical improvement on April 23, 1997. Dr. Kemp testified that, at the time Baker reached maximum medical improvement, he made a determination that Baker was "most likely at permanent total disability."
Two "Functional Capacity Evaluations" ("FCEs") were conducted on Baker. The first FCE was conducted on February 17, 1997; it reflected that Baker demonstrated submaximal effort during the test. The FCE indicated that Baker could be employed in sedentary to light-duty jobs.
The second FCE was conducted on October 29, 1997; as a result of that FCE, the examiner assigned Baker a 10% impairment rating. However, the examiner could not assess work restrictions for Baker, because of Baker's significant symptom magnification and indications of submaximal effort during the course of the FCE examination. We note that the examiner did report that Baker undoubtedly had some pain and some restrictions because of his injury and his pain, but he reported that he could not assess Baker's work restrictions because of the invalidity of the FCEs.
Wal-Mart submitted a vocational report indicating that, although the assessment was difficult because of Baker's submaximal efforts on the FCEs, Baker had suffered a 48% to 52% loss of access to employment.
Marilyn Oakes, the vocational expert who testified on behalf of Baker, testified that Baker was permanently and totally disabled as a result of his back injury. Oakes testified that Baker was functionally illiterate and that he scored low on dexterity testing; Oakes testified that Baker had lost access to over 99% of all jobs in Alabama.
Baker testified at trial that he was in constant pain and that he was unable to either sit or stand for any significant length of time without pain. Baker's wife testified that, because of his pain, his activities were severely restricted.
Wal-Mart argues that the trial court erred in determining that Baker was permanently and totally disabled. Although this court might not have reached the same result, given the evidence regarding Baker's submaximal efforts and symptom magnification on the FCE tests, we cannot say that the trial court erred. The experts agreed that Baker was capable of sedentary to light-duty employment, but the vocational expert testified that Baker has no access to those jobs because he is functionally illiterate. Further, Baker and his wife testified regarding the degree of Baker's pain and the extent to which his daily activities were restricted because of his pain. The trial court is in the best position to observe the demeanor of the witnesses and to assess their credibility. Yellow Freight Systems, Inc. v. Green,612 So.2d 1209 (Ala.Civ.App. 1992). As to this issue, Wal-Mart has shown no error.
Wal-Mart next argues that the trial court erred in excluding from evidence a videotaped surveillance of Baker. On appeal, Wal- Mart argues that the videotaped surveillance was "work product," and that Baker should have been required to obtain a court order in order to compel Wal-Mart's production of the videotape. However, Wal-Mart did not make this argument before the trial court. This court may review only those arguments *Page 522 
presented to the trial court. Andrews v. Merritt Oil Co.,612 So.2d 409 (Ala. 1992).
Wal-Mart argued before the trial court, and now argues again on appeal, that the trial court erred in refusing to allow it to present the videotape as rebuttal evidence. The trial court excluded the videotape on the grounds that, during discovery, Baker had twice requested a copy of any videotape of Baker and that Wal- Mart had not produced the tape. Wal-Mart did not provide Baker with a copy of the videotape until the morning of the trial. A determination regarding the admissibility of evidence is within the sound discretion of the trial court.Marine Systems, Inc. v. Slyman, 648 So.2d 1167 (Ala.Civ.App. 1994). It appears from the record that the videotape shows Baker driving and shows him climbing over a fence. Baker testified that he sometimes engaged in driving and that he did not remembering climbing over a fence, but that he might have. We cannot say that Baker's testimony was such that the videotape would have rebutted the testimony or would have called his credibility into question. As to the videotape, the record indicates nothing requiring a reversal.
Wal-Mart next argues that the trial court erred in its calculation of Baker's life expectancy for the purpose of calculating the workers' compensation award; as a result of the error, Wal-Mart argues, the trial court also erred in calculating the attorney fee and by failing to reduce the attorney fee to present value.
The trial court determined that Baker had a life expectancy of 1,491 weeks. It is not clear from the record how the trial court determined Baker's life expectancy. Wal-Mart argues that the trial court erred in failing to take judicial notice of the mortality table referenced in § 35-16-3, Ala. Code 1975, and in failing to use that mortality table. In Fovil Mfg. Co. v. Watts,569 So.2d 406 (Ala.Civ.App. 1990), this court held that where the plaintiff failed to present evidence regarding his life expectancy, the trial court erred in taking judicial notice of any mortality table other than that provided for in § 35-16-3, Ala. Code 1975.
Baker was 51 years old when the trial court entered its judgment. The mortality table referenced by § 36-16-3 that was in effect at the time of the trial court's judgment indicated Baker had a life expectancy of 24.52 years. Thus, Baker's life expectancy was approximately 1,279 weeks.[1] The trial court erred in determining Baker's life expectancy, and, therefore, in calculating his aggregate workers' compensation award.
In Ex parte St. Regis Corp., 535 So.2d 160 (Ala. 1988), our supreme court discussed the calculation of a lump-sum award of an attorney fee. The court held that a lump-sum attorney fee in a workers' compensation case is limited to 15 percent of the aggregate award, reduced to its present value. Ex parte St. RegisCorp., supra. Wal-Mart correctly argues that the trial court erred in failing to reduce the attorney fee to its present value.
We remand this case for the trial court to recalculate the aggregate award of benefits and the attorney fee.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, J., concurs.
YATES and MONROE, JJ., concur in the result.
ROBERTSON, P.J., concurs in the result only.
[1] "There are 52 weeks and one day in each regular year, and 52 weeks and two days in each leap year. Therefore, in each four-year period, there are 1461 days, or 208.7143 weeks." Exparte St. Regis Corp., 535 So.2d 160, 162 n. 1 (Ala. 1988). There are 6.13 four-year periods in 24.52 years; therefore, the total number of weeks for Baker's life expectancy is 1,279.4187. Id. *Page 523