872 So.2d 181 (2003)
Rhonda L. PATTERSON
v.
LIZ CLAIBORNE, INC.
2010266.
Court of Civil Appeals of Alabama.
June 27, 2003.
Rehearing Denied August 15, 2003.
*182 Charles H. Volz III of Volz & Williams, P.C., Montgomery, for appellant.
Bennett L. Pugh, Joseph H. Driver, and Holly H. Bazemore of Carr, Allison, Pugh, Howard, Oliver & Sisson, P.C., Birmingham, for appellee.
THOMPSON, Judge.[1]
Rhonda L. Patterson sued her employer, Liz Claiborne, Inc., seeking workers' compensation benefits for an on-the-job injury she contended she sustained on April 7, 2000. Liz Claiborne answered and denied liability. The trial court conducted an ore tenus hearing. At the close of Patterson's presentation of evidence, Liz Claiborne moved for a judgment as a matter of law.
On September 6, 2001, the trial court entered a judgment granting Liz Claiborne's motion for a judgment as a matter of law. Patterson filed a postjudgment motion, and the trial court denied that motion. Patterson timely appealed on December 14, 2001. The appeal was originally assigned to another judge on this court on May 13, 2002; it was reassigned on May 28, 2003.
Patterson worked for Liz Claiborne as a packer. In that job position, she folded *183 boxes, packed them with clothing, and closed the boxes. Patterson testified that on April 7, 2000, she experienced back pain while closing a box. Patterson reported the April 7, 2000, incident to her supervisor at Liz Claiborne. On her report of injury, Patterson stated that she felt pain travel through her back and down her legs. In that report, Patterson also stated that "[t]he injury is an ongoing injury since 1998."
Dr. Kirven Ulmer, one of Patterson's doctors, released her to work with no restrictions on June 30, 2000. Patterson returned to work at Liz Claiborne for a short period of time, and then she took "family medical leave" from her employment. At the time of the trial, Patterson had not returned to work at Liz Claiborne, but it is undisputed that Liz Claiborne had not terminated her employment.
Patterson had suffered several on-the-job back injuries before the April 7, 2000, incident. Patterson suffered a back injury in May 1996, another in September 1997, and a third in December 1998. It is not clear whether Patterson received workers' compensation benefits for the first back injury, but she did receive benefits for the 1997 and 1998 back injuries.
Patterson claimed at trial that she suffered a "new injury" on April 7, 2000, and that her medical records indicated that she had a disk herniation that was not present at the time of her previous back injuries. Patterson claimed to be totally disabled as a result of the April 7, 2000, incident; she testified that she was in severe pain and that "I can't do nothing."
There were a number of inconsistencies between Patterson's testimony at trial and her actions between the time of the April 7, 2000, incident and the August 23, 2001, trial. Although at trial she claimed to have suffered a new injury, when originally reporting the injury to Liz Claiborne, Patterson had indicated that the pain she experienced on April 7, 2000, was related to her 1998 injury. Patterson admitted at trial that she told one of her doctors that the injury for which she was seeking treatment began in 1998.
Patterson insisted at trial that she was disabled and that she was unable to do anything because of her claimed new injury and the pain it caused. However, Patterson admitted to submitting an application for disability benefits on July 20, 2000. On that application, Patterson stated that she had suffered an on-the-job injury on December 20, 1998, and did not mention the April 7, 2000, incident. Later, on November 3, 2000, Patterson applied for unemployment-compensation benefits. On her November 2000 unemployment-compensation application, Patterson asserted that she was not disabled, that she was available to work full-time, and that she was willing to travel 40-50 miles one way to a job. In addition, Patterson denied, on her unemployment-compensation application, that she had received or applied for workers' compensation benefits. On questioning from the trial court, Patterson testified that she lied on her application for unemployment-compensation benefits because she was "desperate."
Patterson asserted at trial that she was unable to work or return to work at Liz Claiborne. Nevertheless, Patterson admitted filling out an application for employment with Herff Jones, a potential employer, while she was on "family medical leave" from Liz Claiborne. The date of that application was March 14, 2001, just a few months before the trial of this matter. On that employment application, Patterson indicated that she was available to work on a full-time basis, at any available position, beginning March 15, 2001. When the trial court inquired as to why she did not return to work at Liz Claiborne rather than apply for employment with Herff Jones, Patterson answered that she had gone with a friend who was applying for employment at Herff Jones and that she had filled out the employment application because she was "just sitting [t]here."
In its September 6, 2001, judgment, the trial court detailed the above-mentioned inconsistencies, and it concluded:

*184 "The Court has heard the testimony of [Patterson] and finds that she has been untruthful in her testimony in stating that she cannot perform any work due to severe pain. The Court has reviewed all of the evidence and finds that [Patterson] is not credible or truthful in her testimony."
(Emphasis added.)
In addition, in its September 6, 2001, judgment, the trial court made the following findings and conclusions:
"9. The Court has reviewed all available documentation concerning the treatment [of Patterson] by her physicians, records from her personnel file, and the applications which she has submitted to both the unemployment compensation commission and Herff Jones. The Court hereby expressly finds that [Patterson] did not sustain an accident within the meaning of the Alabama Workers' Compensation Act on April 7, 2000. [Patterson] did not sustain an event or occurrence which would give rise to a claim against [Liz Claiborne] for any incident which may have occurred on April 7, 2000. Moreover, the Court finds that the episode of back pain was a recurrence as defined by U[nited States Fidelity & Guaranty Co.] v. Stepp, 642 So.2d 712 (Ala.Civ.App. 1994). Whatever pain [Patterson] experienced on April 7, 2000, did not contribute to her overall disability and all medical treatment relating to her low back should relate back to the previous workers' compensation carrier, Hartford Insurance Company.
"10. At the close of [Patterson's] case, [Liz Claiborne] moved for a directed verdict. After careful consideration of the evidence presented at the close of [Patterson's] case, it is clear to the Court that the motion is due to be granted and that [Patterson] cannot sustain her burden of proof that an accident occurred on April 7, 2000, which arose out of and within the course of her employment. Moreover, any episode of pain experienced on that date relates back to the December 1998, injury for which medicals are still open.

"Judgment is hereby entered in favor of [Liz Claiborne] on [Patterson's] complaint, with costs taxed as paid."
(Emphasis added.)
On appeal, Patterson argues that the trial court erred in entering a judgment as a matter of law in favor of Liz Claiborne because, she asserts, the trial court made comments during the trial that indicated that it had determined that she "`did not sustain an accident' because she `did not sustain an event.'" (Emphasis in appellant's brief.) Patterson also contends that the trial court erred in determining that the April 7, 2000, incident was a recurrence of an earlier injury, rather than a new injury.
We cannot agree with Patterson's contention that the trial court concluded that Patterson did not suffer an accident because it found that there was no specific event that gave rise to Patterson's claim against Liz Claiborne. In its judgment, the trial court found that Patterson had not suffered an accident "within the meaning of the Alabama Workers' Compensation Act." In interpreting the term "accident" under the Workers' Compensation Act, this court has held that it is not necessary for a worker to show "a sudden, traumatic event"; rather, "[i]f an employee's job causes her injury, the injury is an `accident'" within the meaning of the Workers' Compensation Act. Dunlop Tire & Rubber Co. v. Pettus, 623 So.2d 313, 315 (Ala.Civ.App.1993). See also Ex parte Harris, 590 So.2d 285, 287 (Ala.1991) (a claimant must establish that the job caused the claimed injury, not that a violent *185 or unusual event resulted in the injury; "[t]he term `accident' is not a characterization of the method of injury, but the result thereof"). We will not presume that the trial court was unaware of that caselaw interpreting the meaning of the term "accident" within the context of the Workers' Compensation Act.
Further, the language of the trial court's judgment is consistent with the theory of the case advanced by Patterson throughout the trial of this matter. In its judgment, the trial court determined (1) that there had not been an accident "within the meaning of the Alabama Workers' Compensation Act" on April 7, 2000; (2) that no event or new occurrence had transpired; and (3) that the pain episode Patterson experienced on April 7, 2000, was a recurrence of one of her previous back injuries.
At the beginning of the trial, the parties characterized the issue for the trial court as follows:
"[ATTORNEY FOR LIZ CLAIBORNE]:... [T]he only real issue and focus is whether or not this event on April 7th, 2000, was a recurrence, which relates it back to an old injury or injuries, or whether it was an aggravation, which means it is a new injury. And I think that is the real crux of the matter here today.
"[ATTORNEY FOR PATTERSON]: I think that I would agree that that is correct insofar as it goes. It is a matter of whether or not it is a recurrence of an old injury, as he said, whichwell, whatever. As your Honor may recall, I dropped or I told you that I was going to dismiss my alternative claim that it was a recurring injury.
"[THE COURT]: I remember.
"[ATTORNEY FOR PATTERSON]:

So what is left is whether or not it is an aggravation of that old injury or whether or not it is a new injury altogether."
(Emphasis added.) In commenting on the issue to which she would like the parties to confine their evidence, the trial judge stated that the issue before the court was "whether or not it is a new injury, an aggravati[on] or reoccurrence." During the trial, Patterson argued almost exclusively that the April 7, 2000, incident caused a "new injury." Several times, Patterson stated briefly that, "at the very least," the April 7, 2000, incident caused an aggravation of an old injury, but she did not argue or present any evidence on that theory, other than her assertion made at the beginning of the trial that an aggravation of a preexisting injury constituted a new injury.[2]
At the hearing on her postjudgment motion, Patterson argued that the trial court erred in determining that she had not suffered a new injury because the trial court had stated frequently that there was no new "event" to cause an injury. During that hearing, however, the trial court stated that it had reviewed the medical records the parties had submitted and that it had considered Patterson's testimony. We note that the trial court repeatedly stated that it found Patterson's testimony to be untruthful and that it reached its decision based largely on its finding that Patterson had "no credibility, zero."
In her brief on appeal, Patterson questions how the trial court could possibly *186 determine, given what she claims are "undisputed facts," that the April 7, 2000, incident was a recurrence. If the April 7, 2000, incident constitutes a recurrence of a previous injury, Patterson must seek treatment under her previous workers' compensation settlement, and she may not obtain a new judgment awarding additional workers' compensation benefits as a result of the April 7, 2000, incident. In this case, Liz Claiborne had acquired a new workers' compensation insurance carrier since the time of Patterson's 1998 injury. Pursuant to the trial court's September 6, 2001, judgment, the previous workers' compensation insurance carrier is responsible for paying for Patterson's medical treatment related to both the December 1998 injury and the April 7, 2000, incident.
"Under the `last injurious exposure' rule, `liability falls upon the carrier covering [the] risk at the time of the most recent injury bearing a causal relation to the disability.' North River Insurance Co. v. Purser, 608 So.2d 1379, 1382 (Ala. Civ.App.1992). The trial court must determine whether the second injury is `a new injury, an aggravation of a prior injury, or a recurrence of an old injury; this determination resolves the issue of which insurer is liable.' Id.

"A court finds a recurrence when `the second [injury] does not contribute even slightly to the causation of the [disability].' 4 A. Larson, The Law of Workmen's Compensation, § 95.23 at 17-142 (1989). `[T]his group also includes the kind of case in which a worker has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion.' 4 A. Larson, § 95.23 at 17-152. A court finds an `aggravation of an injury' when the `second [injury] contributed independently to the final disability.' 4 A. Larson, § 95.22 at 17-141. If the second injury is characterized as a recurrence of the first injury, then the first insurer is responsible for the medical bills; however, if the injury is considered an aggravation of the first injury, then it is considered a new injury and the employer at the time of the aggravating injury is liable for the medical bills and disability payments. North River, supra."
United States Fid. & Guar. Co. v. Stepp, 642 So.2d 712, 715 (Ala.Civ.App.1994).
Patterson contends that she had no problems with her back for the year before the April 7, 2000, incident, and that, therefore, "[t]here can be no dispute that [her] job caused her injury, and therefore, her injury was an accident."[3] She contends that hers is not a situation in which she continued to work at Liz Claiborne with continuing symptoms from her December 1998 injury, followed by an incident that caused a recurrence of pain from that injury. See United States Fid. & Guar. Co. v. Stepp, supra. Patterson contends that "if a claimant establishes by the necessary evidence that the job caused, or contributed *187 to, the injury or death, the claimant has established causation, both legal and medical"; in support of that proposition, she cites Trinity Industries, Inc. v. Cunningham, 680 So.2d 253, 259 (Ala.Civ.App. 1995), affirmed, Ex parte Trinity Industries, Inc., 680 So.2d 262 (Ala.1996), a case addressing a nonaccidental injury.
However, there were conflicts in the evidence from which the trial court could reasonably determine that Patterson lacked credibility. The credibility of a witness is a determination left solely within the discretion of the trial court, and this court may not substitute its own judgment as to the issue of credibility. Hooker Constr., Inc. v. Walker, 825 So.2d 838 (Ala. Civ.App.2001). If a witness does not testify truthfully, the trial court may disregard some or all of the witness's testimony. Clemons v. Clemons, 627 So.2d 431 (Ala. Civ.App.1993). The trial court may also consider a witness's untruthfulness in determining the weight it will afford other evidence presented by the witness. DiIorio v. Long, 839 So.2d 650 (Ala.Civ.App. 2001).
In Tackett v. Elastic Corp. of America, 557 So.2d 1281 (Ala.Civ.App.1990), Tackett sought workers' compensation benefits from her employer. In its judgment, the trial court found that Tackett had made misrepresentations in her deposition or to other people, including the physician who conducted her preemployment physical. The trial court determined that no on-the-job injury had occurred "based explicitly on Tackett's lack of credibility," and, therefore, it denied her claim for workers' compensation benefits. Tackett, 557 So.2d at 1284. This court affirmed, noting that the trial court had the "sole responsibility of weighing the evidence." Id.
The trial court in this case was not bound to believe Patterson's testimony, even that testimony it did not specifically mention in its judgment as lacking credibility. See DiIorio v. Long, supra; Clemons v. Clemons, supra. Patterson had insisted that she suffered a new injury and that, as a result of that alleged injury, she was permanently, totally disabled. However, Patterson's assertions on her applications for disability benefits and unemployment compensation, as well as her application for employment with an employer other than Liz Claiborne, could be viewed as contradicting the testimony Patterson provided at the trial. The trial court specifically found Patterson's explanations of those contradictions to be implausible. The trial court made many specific findings regarding its determination that Patterson lacked credibility and had testified untruthfully. Therefore, it appears that although the trial court believed Patterson might have suffered an episode of back pain on April 7, 2000, it did not believe that that episode was more than temporary or that it caused or contributed to a new injury so as to constitute a compensable "accident" under the workers' compensation statute. See Dunlop Tire & Rubber Co. v. Pettus, supra.
The trial court's judgment indicates that it merely rejected Patterson's argument that her job caused a new injury on April 7, 2000. It is clear from the language of the trial court's judgment that the trial court determined that the April 7, 2000, incident did not cause or "contribute even slightly" to any injury, and, therefore, that that incident constituted a recurrence of Patterson's earlier injury. See United States Fid. & Guar. Co. v. Stepp, 642 So.2d at 715. Given its findings regarding Patterson's lack of credibility, we cannot say that the trial court erred in denying her claim for workers' compensation benefits. See Tackett v. Elastic Corp. of America, supra.
*188 Patterson last argues that the trial court erred in refusing to grant her request for a continuance in order to allow one of her doctors to testify. At the beginning of the August 23, 2001, trial, Patterson's attorney informed the trial court that Dr. Kynard Adams would testify in person, and that he expected Dr. Adams to arrive in court between 11:30 a.m. and 12:00 p.m. Patterson's attorney requested that the trial court allow Dr. Adams to testify "out of order" when he arrived, and the trial court agreed to that request. However, at the close of Patterson's presentation of evidence, her attorney moved for a continuance because Dr. Adams had telephoned to state that he had a medical emergency and could not be present at the trial to testify. Dr. Adams had not been subpoenaed and had not been deposed. The trial court denied Patterson's request for a continuance.
In denying Patterson's request for a continuance of the trial, the trial court stated, in essence, that, because of the problems with Patterson's lack of credibility, it did not need to hear Dr. Adams's testimony. In her brief on appeal, Patterson asserts only cursorily that Dr. Adams's testimony "probably would have affected the result of the trial." See Ex parte Driver, 258 Ala. 233, 237, 62 So.2d 241, 243 (1952). However, the comments made by the trial court during the arguments on that motion and at the hearing on Patterson's postjudgment motion clearly indicate that that assertion is without merit because the trial court based its determination largely on its impression of Patterson and her apparent lack of truthfulness.
Continuances are not favored, and the decision whether to grant or deny a motion for a continuance is within the discretion of the trial court. In re Vosyka, 494 So.2d 421 (Ala.Civ.App.1986). The decision whether to grant or deny a continuance will be reversed on appeal only upon a showing of "a gross abuse" of the trial court's discretion. Autery v. Autery, 515 So.2d 708, 709 (Ala.Civ.App.1987). In order to be entitled to a continuance, the movant must establish:
"(1) that the expected evidence will be material and competent; (2) a probability that the testimony can be obtained at a future date to which the cause may be continued or postponed; (3) due diligence having been exercised by the movant to secure the absent witness or evidence; (4) the expected evidence must be credible and will probably affect the result; (5) the evidence must not be merely cumulative or impeaching; [and] (6) that the motion for continuance is not made merely for purposes of delay."
Ex parte Driver, 258 Ala. at 237, 62 So.2d at 243. Given the record on appeal, we cannot say that the trial court's refusal to grant a continuance in this matter constituted a gross abuse of its discretion. Autery v. Autery, supra.
AFFIRMED.
PITTMAN, J., concurs specially.
CRAWLEY, J., concurs in the result.
YATES, P.J., and MURDOCK, J., dissent.
PITTMAN, Judge, concurring specially.
As the main opinion notes, the trial court expressly stated that Patterson had "testified dishonestly." Based in part upon that determination of Patterson's credibility, that court entered a judgment in favor of Liz Claiborne, finding that "[w]hatever pain Patterson experienced on April 7, 2000, did not contribute to her overall disability." That judgment was entered at trial in response to what Liz Claiborne termed a "directed verdict" motion (which the main opinion terms a motion *189 for "a judgment as a matter of law"). However, because the case was heard without a jury, with the trial court acting as the trier of facts, Liz Claiborne's motion is more properly deemed a motion for a judgment on partial findings, pursuant to Rule 52(c), Ala. R. Civ. P. See Loggins v. Robinson, 738 So.2d 1268, 1270-71 (Ala. Civ.App.1999).
The true nature of Liz Claiborne's motion is significant as a matter of both trial and appellate procedure. Although "[i]t is not the role of the circuit court to consider the credibility of a witness when it is ruling upon a motion for a directed verdict," McCombs v. Bruno's, Inc., 667 So.2d 710, 713 (Ala.1995), no such limitation applies to a ruling on a motion for a judgment on partial findings. Because the trial judge "`is the trier of fact in a nonjury action, he or she may weigh and consider the evidence on a motion for'" a judgment on partial findings; moreover, on appellate review, the trial court's ruling on a motion for a judgment on partial findings "`need only be supported by credible evidence and will not be set aside unless it is clearly erroneous or palpably wrong or unjust.'" Loggins, 738 So.2d at 1271 (quoting Feaster v. American Liberty Ins. Co., 410 So.2d 399, 402 (Ala.1982)).
Because the main opinion applies a presumption of correctness in concluding that the trial court's judgment warrants affirmance, a conclusion that is based in part upon the trial court's credibility findings, the analysis set forth in that opinion is consistent with the proper standard of review. Therefore, I concur.
CRAWLEY, Judge, concurring in the result.
Although I agree with Judge Murdock's conclusion that the trial court made a glaring error in its application of the term "accident" as that term is defined in the field of workers' compensation law, I must still concur in the affirmance of the trial court's judgment. The trial court's judgment states that Patterson's injury was a recurrence of an existing injury and that it did not contribute to her overall disability, which is similar to the wording used to define a "recurrence" in United States Fidelity & Guaranty Co. v. Stepp, 642 So.2d 712, 715 (Ala.Civ.App.1994). Therefore, this court must affirm the trial court's judgment because the evidence at trial and the trial court's own credibility determinations support that conclusion.
MURDOCK, Judge, dissenting.
Liz Claiborne hired Patterson in February 1997. During her employment at Liz Claiborne, Patterson worked as a packer; her job duties included, among other things, folding boxes, packing them with clothes, and closing the boxes. In its final judgment, the trial court found:
"2. [Patterson] experienced an episode of back pain on April 7, 2000 while employed with [Liz Claiborne]. At that time, [Patterson] was closing a box and had reached across the box to hold the outer flap. She experienced back pain while holding the flap of the box."
At the close of Patterson's case, the trial court granted a motion by Liz Claiborne for a "directed verdict." Among other things, the court stated as follows in its final judgment:
"9. The Court has reviewed all available documentation concerning the treatment [of Patterson] by her physicians, records from her personnel file, and ... the applications which she has submitted to both the unemployment compensation commission and Herff Jones. The Court hereby expressly finds that [Patterson] did not sustain an accident within the meaning of the Alabama Workers' Compensation Act on April 7, 2000. [Patterson] did not sustain an event or occurrence which *190 would give rise to a claim against [Liz Claiborne] for any incident which may have occurred on April 7, 2000. Moreover, the Court finds that the episode of back pain was a recurrence as defined by United States Fidelity & Guaranty Co. v. Stepp, 642 So.2d 712 (Ala.Civ.App. 1994). Whatever pain [Patterson] experienced on April 7, 2000, did not contribute to her overall disability and all medical treatment relating to her low back should relate back to the previous workers' compensation carrier, Hartford Insurance Company.
"10. At the close of [Patterson's] case, [Liz Claiborne] moved for a directed verdict. After careful consideration of the evidence presented at the close of [Patterson's] case, it is clear to the Court that the motion is due to be granted and that [Patterson] cannot sustain her burden [of proof] that an accident occurred on April 7, 2000, which arose out of and within the course of her employment. Moreover, any episode of pain experienced on that date relates back to the December 1998, injury for which medicals are still open."
(Emphasis added.)
Patterson contends that the trial court erred in finding that Patterson "cannot sustain her burden of proof that an accident occurred on April 7, 2000," and in finding that the injury of April 7, 2000, was a "recurrence" of a previous injury.[4] Patterson also contends that the trial court erred by refusing to grant a short continuance for the purpose of allowing Dr. Kynard Adams, Patterson's family physician, to testify.
Before presenting any testimony to the trial court, the parties stipulated that the issue before the court was whether on April 7, 2000, Patterson had experienced a recurrence of an old injury, on the one hand, or an "aggravation" of an old injury or a new injury, on the other hand. Unlike a recurrence of an old injury, an aggravation of an old injury is compensable as a new injury under the Workers' Compensation Act ("the Act"), making the employer at the time of the aggravation liable for both medical bills and disability payments. United States Fid. & Guar. Co. v. Stepp, 642 So.2d 712, 715 (Ala.Civ.App. 1994).
With respect to the trial court's finding that Patterson could not prove that an "accident" compensable under the Act occurred on April 7, 2000, and that the April *191 7, 2000, injury was merely a recurrence of a preexisting injury, the following excerpts from the trial transcript are revealing:
"THE COURT: [T]he only thing I've got to decide ... is whether this is a new injury or a reoccurrence from an old one....
"....
"THE COURT: I want to hear the evidence that is going to tell me whether or not this is a new injury or a reoccurrence from this old one. I mean, that's what I want to hear. So anything that either side has got that's going to help this court make that decision, I want to hear it.
"....
"[PATTERSON]: On April 7th ... I had made a box.... I had put the clothes inside the box, and I was trying to close the box, and I felt pain in the lower part of my back and down into my legs.
"....
"THE COURT: Let me ask you this, Ms. Patterson. When you felt the pain, were you just closing the box?
"[PATTERSON]: Iyes.
"THE COURT: I mean, were you pushing it?
"[PATTERSON]: No. I was trying to close the box because it was a big box and
"THE COURT: Right. You had put all the clothes in there?
"[PATTERSON]: Right.
"THE COURT: And you were just trying to fold it up
"[PATTERSON]: Right.
"THE COURT:to close it, and that's when you felt the pain?
"[PATTERSON]: Yes.
"THE COURT: Okay. Thank you.
"....
"THE COURT: [Counsel for Patterson], let me stop y'all. I mean, I just am interested toI mean, she didn't do anything to get a new injury. I mean, I understand she had pain from closing the box, but, obviously, it's because she already had back problems. I mean, she didn't do anything. I mean, if she had been pushing the box or something, I could see it. But, I mean, I have nothing right now that she even did anything to constitute a new injury. I mean, how are you going to prove it was a new injury?
"[COUNSEL FOR PATTERSON]: Judge, she was loading a box. She was pushing
"THE COURT: All sheshe wasn't pushing anything. I asked her. She said I was putting the clothes in it and I was folding the box. There's nothing here to even constitute having a new injury.

"[COUNSEL FOR PATTERSON]: She had a sharp, severe pain.
"THE COURT: Which I understand, but that means it goes back to the old injury. I mean, how are you going to prove that this is a new injury?
"[COUNSEL FOR PATTERSON]: She's got a repetitive motion job that requires moving one place to the other, loading boxes, bending over to these boxes, going back to another place, bending over, loading a box.
"THE COURT: But, I mean, maybe I've missed something, but she testified all I was doing was folding the box. Did I miss something?
"[COUNSEL FOR PATTERSON]: She was putting clothes in a box. She was
"....
"THE COURT: ... All she was doing was folding the box, which I understand *192 she might have pain, but there isn't any action here to constitute a new injury.

"[COUNSEL FOR LIZ CLAIBORNE]: Judge, the similar case on this point
"PATTERSON: I was closing the box.
"[COUNSEL FOR LIZ CLAIBORNE]:is USF & G versus [Stepp], and it addresses this very situation where there's no real event
"THE COURT: Right.

"[COUNSEL FOR LIZ CLAIBORNE]:that causes the pain.
"THE COURT: I don't have any event here.

"[COUNSEL FOR LIZ CLAIBORNE]: That's right. A new event. And that's why they say, Judge, in [Stepp] it goes back to the old injury. It'sthere's a little recurrence, there's a little flare-up of pain, but because there's no real major accident, event, it's just not the responsibility of the current carrier. It goes back to the old injury which she stated in thoseboth of those statements, Mrs. Patterson indicated in her own handwriting it relates back to 1998.
"THE COURT: I mean, what I'm saying is I understand she had sharp pain, and I appreciate that. I think Ms. Patterson did. But there's no event here
"[COUNSEL FOR LIZ CLAIBORNE]: That's right.
"THE COURT:to constitute an injury. That's why I asked her, Ms. Patterson, were you pushing the box? No. She was just folding the box. I mean, come on, y'all.
"....
"THE COURT: I mean, I'm sorry, y'all. But there's no action to constitute a new injury unless someone has got something they're going to prove to me.
"....
"THE COURT: And what I'm saying is there's no event here to constitute a new injury.

"[COUNSEL FOR LIZ CLAIBORNE]: That's right.
"THE COURT: If she'd told me I was pushing the box, Judge, if she told me something like that, I would say yeah. But she said I was just folding the box.
"[PATTERSON]: I said closing the box.
"THE COURT: Which I agree with Ms. Patterson. I mean, I think she probably did have pain. But it's going to relate back to the old injury. There's no occurrence of new injury here.

"[COUNSEL FOR LIZ CLAIBORNE]: I would also submit, Your Honor, that if it is a repetitive situation like [Patterson] suggests, then the new burden of proof would apply that she's got to prove by clear and convincing evidence, which certainly ... it's not met here.
"....
"THE COURT: ... I can tell you, I mean, folding a box doesn't constitute a new injury. Now, I'm just
"[COUNSEL FOR PATTERSON]: I wasI was in my house one day, Your Honor, and I leaned over to pick up a piece of lace which weighed about two pounds, and when I did, I herniated a disc in my lumbar spine, my L5 disc in my spine.

"THE COURT: Well, I mean, I'm going to listen to the
"[COUNSEL FOR PATTERSON]: And I was out ofI was out of commission for quite some time with this

*193 "THE COURT: I'm going to listen to the doctors, but I'm just telling y'all right nowI mean, I'm just asking y'all, because I justI tell lawyers what I think is going on because I don't like to waste people's time. What I've heard so farI mean, that's why I'm asking [counsel for Patterson]. Maybe you're going to have other evidence to show me that this is a new injury, which I am going to be happy to hear. But I'm just saying based on what Ms. Patterson said, we don't have a new injury. But, I mean, if we're going to have something else that I need to hear, then I'm going to be happy to hear it. But I'm just telling you what I've heard right now, there's no event that constitutes a new injury.

"I think you did have pain, Ms. Patterson, and I appreciate that. But I'm saying it goes back to the old injury. There's no event for a new one."

(Emphasis added.)
Patterson attempted at trial to establish that she experienced a new injury (a disc herniation) or a worsening of a prior injury as a result of and while performing a task required by her employment. Nothing in the evidence presented at trial precluded such a possibility. However, the trial court refused to entertain such a notion. Instead, the trial court clearly focused on the method of injury, in essence presuming that no injury could occur without some unusual strain or exertion or some sudden or violent trauma. Such a presumption finds no support in any of the evidence presented, including the medical evidence. Moreover, it finds no support in the law. Rather, consistent with Patterson's position, the law in Alabama is that if an injury arises out of and in the course of the performance of a job, then the injury is an "accident" within the meaning of the Act.
That the trial court had a different, and an incorrect, understanding of the meaning of the term "accident" is not something I "presume," but a conclusion I am forced to reach by the unequivocal and emphatic assertions repeatedly made by the trial court, as quoted above. This incorrect meaning of the term was the basis for the trial court's written finding that Patterson did not sustain an "accident" within the meaning of the Act:
"The court hereby expressly finds that [Patterson] did not sustain an accident within the meaning of the Alabama Workers' Compensation Act on April 7, 2000. [Patterson] did not sustain an event or occurrence which would give rise to a claim against [Liz Claiborne] for any incident which may have occurred on April 7, 2000."
Liz Claiborne cited the trial court to United States Fidelity & Guaranty Co. v. Stepp, 642 So.2d 712, as a case that, it contended, addresses "[the] situation where there's no real event." Liz Claiborne argued that Stepp is a case where "there's no real event ... that causes the pain" and "that's why they say, Judge, in [Stepp] it goes back to the old injury." It is clear from a review of the trial transcript and the trial court's judgment that the trial court accepted Liz Claiborne's argument; because the court found that there was no "event" or "occurrence" on April 7, 2000, it also found that the pain experienced by Patterson on that day necessarily resulted from a mere recurrence of an old injury and that there was no compensable "accident" on that day.
As Patterson correctly argues, however, the appropriate standard for determining whether there has been an "accident" for purposes of the Act is not whether there has been "an event," but whether the job caused an "injury." In Ex parte Harris, *194 590 So.2d 285 (Ala.1991), the Alabama Supreme Court stated:
"An `accident' is defined by § 25-5-1(8)[, Ala.Code 1975,] as `an unexpected or unforeseen event, happening suddenly and violently, with or without human fault, and producing at the time injury to the physical structure of the body or damage to an artificial member of the body by accidental means.' This Court has long concluded that if the job caused the injury then the injury was an `accident' within the intent of the Act. Pow v. Southern Construction Co., 235 Ala. 580, 180 So. 288 (1938), Kane v. South Central Bell Telephone Co., 368 So.2d 3 (Ala.1979). In Kane, the Court ... reiterat[ed] the point that `[t]he requirement that there must be shown a violent and unusual event which causes the injury [has been] replaced by the principle that there was an accident if the result was unexpected and unforeseen and it was caused by the job.' Kane, 368 So.2d at 5 (citations omitted). Therefore, an employee is not required, under the Act, to prove the existence of some violent and unusual event that resulted in his or her injuryif the job caused the injury, then the injury is an accident within the intent of the Act.

"... Gentry [v. Swann Chemical Co., 234 Ala. 313, 174 So. 530 (1937),] was one of several cases that held that an accident related to the event causing the injury, not the result, and that that event must take place suddenly and violently. See Kane, id., at 4, quoting City of Tuscaloosa v. Howard, 55 Ala.App. 701, 318 So.2d 729 (1975). As noted earlier, such a definition of `accident' is no longer valid. Kane, id. at 5. The term `accident' is not a characterization of the method of injury, but the result thereof."
590 So.2d at 286-87 (first emphasis added). Thus, although a normal occupational stimulus that causes an injury may not be "accidental" in a colloquial sense, an unusual physical reaction to that stimulus may nonetheless satisfy the statutory requirement of an unexpected and unforeseen event. As this court held in City of Tuscaloosa v. Howard, 55 Ala.App. 701, 318 So.2d 729 (Ala.Civ.App.1975), it is not necessary that an injured employee prove "some unusual strain or exertion not ordinary to the job." 55 Ala.App. at 705, 318 So.2d at 732. See Consolidated Coal Co. v. Dill, 248 Ala. 5, 26 So.2d 88 (1946); Pow v. Southern Construction Co., 235 Ala. 580, 180 So. 288 (1938) (holding that injuries covered by the Act are not limited to external traumatic injuries).
In a case similar in many respects to the present case, Alabama Textile Products Corp. v. Grantham, 263 Ala. 179, 82 So.2d 204 (1955), a sewing-machine operator had herniated a disc by simply reaching into a bin for fabric. The trial court found the employee to be entitled to compensation, although she had performed the same maneuver every working day for 23 years without previous incident. This court stated:
"There was no finding by the trial court that the injury was caused by a blow, slip, fall or that it resulted from any unusual strain or exertion. But such findings are not necessary to support the conclusion that an injury of the kind which this plaintiff sustained was caused `by an accident' within the meaning of our workmen's compensation law when suffered in the manner outlined above."
Alabama Textile Prods. Corp., 263 Ala. at 184, 82 So.2d at 208.
In another case involving a back injury, this court stated in Dunlop Tire & Rubber *195 Co. v. Pettus, 623 So.2d 313 (Ala.Civ.App. 1993):
"[F]or the purpose of workers' compensation, it is not necessary for [the employee] to show that her ... injury arose from a sudden, traumatic event. If an employee's job causes her injury, the injury is an `accident.'"
623 So.2d at 315 (citing Ex parte Harris, 590 So.2d 285). See also Robinson Foundry, Inc. v. Tinsley, 510 So.2d 825, 827 (Ala.Civ.App.1987) ("[e]ven if there is an existing infirmity or latent disease, our courts have said that an aggravation of such infirmity by an accident occurring on the job is compensable," at least where such previous injury or infirmity has not demonstrated itself as disabling so as to prevent the employee from performing his job in a normal manner).
Based on the foregoing, I conclude that the trial court's refusal to consider that Patterson had suffered an "accident" was erroneous. No "event" other than that which occurred in the present case was necessary for there to have been an "accident" within the meaning of the Act.
Concomitantly, I conclude that that portion of the trial court's judgment finding that the incident of back pain experienced by Patterson on April 7, 2000, was merely a "recurrence" of a previous injury is due to be reversed and the cause remanded for a new trial as to this issue.
Patterson had performed her job as a packer without any problems related to her back for over a year before the April 7, 2000, incident. Dr. Kirven Ulmer, the employer-designated physician who first treated Patterson following the April 7, 2000, accident, arranged for Patterson to have an MRI. Dr. E.P. Vinings, a radiologist, reviewed the results of that MRI and sent a letter to Dr. Ulmer, stating, in pertinent part:
"At L2-L3 is a disc herniation slightly to the left of midline....
"At L4-L5 and L5-S1 is desiccation... suspicious for tears of the annulus.
"....
"IMPRESSION:
"1. L2-L3 disc herniation.
"2. Tears of the annulus at L4-L5 and L5-S1."
Dr. Donovan Kendrick, a neurosurgeon, also examined Patterson and reviewed the MRI. Dr. Kendrick sent a letter to Dr. Ulmer dated June 15, 2000, stating, in pertinent part:
"I saw ... Patterson in the office today. As you know this 29-year-old packer for... Liz Claiborne ... has been having pain since December of 1998.... She had an MRI scan on 5/31 that shows a small midline disc bulge at L2-3 as well as degenerative changes of the disc at L4-5 and L5-S1 without frank herniation.
"....
"My IMPRESSION is she does have degenerative disc disease which would be consistent with her history of back pain. Unfortunately there is no surgical therapy which would help her."
Despite this evidence, and the sudden onset of back pain that occurred on April 7, 2000, the court found that this episode of pain was a "recurrence of a previous injury." Based on the record and the trial court's judgment, however, it is clear that the trial court's finding as to a recurrence was merely a function of its erroneous view that because there was no "event" there could be no accident.
In addition, the trial court appears to have incorrectly concluded that Dr. Kendrick determined "that [Patterson] did not have a herniated disc." Dr. Kendrick wrote that Patterson's MRI scan in May 2000 showed "a small midline disc bulge at *196 L2-3," a finding consistent with Dr. Vinings interpretation of the MRI. (Indeed, Dr. Kendrick's letter went on to juxtapose his findings with regard to Patterson's condition at the L4-L5 and L5-S1 areas of her spine by stating that she had "degenerative changes of the disc at L4-5 and L5-S1 without frank herniation.")
Rather than focusing on whether there was an "event" or "occurrence" on April 7, 2000, the trial court should have considered the evidence before it in light of the following standard:
"A court finds a recurrence when `the second [injury] does not contribute even slightly to the causation of the [disability].' 4 A. Larson, The Law of Workmen's Compensation, § 95.23 at 17-142 (1989). `[T]his group also includes the kind of case in which a worker has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion.' 4 A. Larson, § 95.23 at 17-152. A court finds an `aggravation of an injury' when the `second [injury] contributed independently to the final disability.' 4 A. Larson, § 95.22 at 17-141."
Stepp, 642 So.2d at 715. See also Ex parte Pike County Comm'n, 740 So.2d 1080 (Ala. 1999).
Similarly, it is clear that the trial court's decision not to grant a continuance to allow Dr. Adams to testify was informed by its conclusion that there was no "event" and therefore no "accident" on April 7, 2000, upon which Patterson could base a claim under the Act.[5] A grant or refusal of a continuance rests within the discretion of the trial court and is not subject to revision except where an obvious and palpable abuse of discretion is shown. Ex parte Driver, 258 Ala. 233, 62 So.2d 241 (1952). In this case, however, the ground upon which the trial court refused to allow a continuance for Dr. Adams to appear and testify was essentially that Dr. Adams's testimony would not be relevant or material in light of the trial court's other findings. For the reasons discussed, that ground is invalid. The trial court's failure to grant a continuance for consideration of Dr. Adams's testimony therefore bolsters my opinion that this cause should be remanded for a new trial as to the issue of whether the incident of April 7, 2000, was, in fact, a "recurrence" of an old injury or, instead, was an aggravation of an old injury or a new injury.[6]
I also note that in paragraph 8 of its judgment the trial court made a finding that Patterson was not entirely credible in her testimony. It is clear from a review of paragraph 8 and the remainder of the trial court's judgment that this credibility finding was not directed to the issue of what occurred, or what Patterson experienced, on April 7, 2000i.e., whether there was an "accident" on that day. To the contrary, the trial court stated during the trial that "I agree with Ms. Patterson" with respect to what occurred on April 7, 2000, and expressly found in its judgment that Patterson did experience an episode of back pain on April 7, 2000, while employed with Liz Claiborne and that this episode *197 occurred at a time when Patterson was reaching to close a box.
Rather, the trial court's comment in paragraph 8 of its judgment was focused on Patterson's testimony regarding the degree of disability, if any, resulting from the April 7, 2000, accident. Paragraph 8 of the trial court's judgment, read in its entirety, indicates as much:
"8. On cross-examination, [Patterson] admitted that the application submitted to both unemployment compensation and Herff Jones were contradictory to her testimony in court concerning her inability to work. The Court has heard the testimony of [Patterson] and finds that she has been untruthful in her testimony in stating that she cannot perform any work due to severe pain. The Court has reviewed all of the evidence and finds that [Patterson] is not credible or truthful in her testimony."
Finally, I note that the trial court's finding in the above-quoted portion of its judgmentthat Patterson is not credible in her statement that "she cannot perform any work" because of her painis not the same as a finding that Patterson suffers from no degree of disability whatsoever. I would hold, therefore, that if the trial court determines in a new trial that Patterson suffered a new injury or aggravated a preexisting injury, it must then determine whether Patterson is disabled to some degree and, if so, to what degree.
The trial court found that Patterson experienced an episode of pain on April 7, 2000, as a result of her employment. No other "event" was necessary to give rise to an "accident" within the meaning of the Act, and the trial court erred in finding otherwise. Therefore, I am forced to conclude that the trial court should conduct a new trial in which it would apply the correct meaning of the term "accident" to the evidence presented in order to determine whether Patterson suffered a new injury or an aggravation of a preexisting injury, or merely the recurrence of a preexisting injury. If the trial court were to find that Patterson suffered a new injury or an aggravation of a preexisting injury, it would then be required to decide the degree, if any, to which Patterson is disabled within the meaning of the Act as a result of that injury.
I therefore respectfully dissent.
YATES, P.J., concurs.
NOTES
[1] This case was originally assigned to another judge on this court on May 13, 2002. It was reassigned to Judge Thompson on May 28, 2003.
[2] On appeal, Patterson has not maintained that the April 7, 2000, incident resulted in an aggravation of her earlier injuries, or that that incident in any way worsened or contributed to an earlier injury or disability. It is not the function of this court to advocate a position on behalf of an appellant or to create a legal argument for the appellant. McLemore v. Fleming, 604 So.2d 353 (Ala.1992); Spradlin v. Spradlin, 601 So.2d 76 (Ala.1992).
[3] A doctor who reviewed Patterson's May 31, 2000, MRI found a "dis[k] herniation" at L2-L3. Dr. Donovan Kendrick, who examined Patterson and reviewed that same MRI, determined that Patterson had a "small midline dis[k] bulge" at the same location, as well degenerative changes at L4-5 and L5-S1 "without frank herniation." Dr. Kendrick concluded that Patterson had "degenerative dis[k] disease which would be consistent with her history of back pain." The trial court found in its judgment that Dr. Kendrick had determined that Patterson did not have a herniated disk. This court must determine whether the trial court's judgment is supported by the evidence, not whether it would have reached the same result given the same evidence. See Wal-Mart Stores, Inc. v. Baker, 751 So.2d 519 (Ala.Civ.App.1999).
[4] Note 2 of the main opinion states that "[o]n appeal, Patterson has not maintained that the April 7, 2000, incident resulted in an aggravation of her earlier injuries." 872 So.2d at 185 n. 2. Patterson's contention on appeal is that the manner in which the trial court came to the conclusion that the April 7, 2000, incident must be considered a "recurrence" is in error. I read Patterson's brief on appeal as contending that, rather than a recurrence, the incident was either a worsening of a prior injury or a new injury. In her brief, Patterson quotes with approval the stipulation by Liz Claiborne at the beginning of the trial that "the only real issue and focus is whether or not this event on April 7, 2000, was a recurrence which relates it back to an old injury or injuries or whether it was an aggravation, which means it's a new injury." This stipulation embodies a correct statement of the law, i.e., that an aggravation of an old injury is tantamount to a "new injury" for purposes of determining whether an "accident" has occurred within the meaning of the Workers' Compensation Act. See United States Fid. & Guar. Co. v. Stepp, 642 So.2d 712, 715 (Ala. Civ.App.1994). I therefore do not read Patterson's brief to this court as contending only that she suffered a "new injury" when she places the term "new injury" within quotation marks and concludes her argument as to this issue with the statement that "[b]ased upon facts and the authorities herein referred to, [Patterson's] injury of April 7, 2000, was a `new injury.'"
[5] In addition to the other parts of the record discussed above, in orally granting Liz Claiborne's motion for a judgment as a matter of law, the trial court stated: "This Court doesn't find that there was any accident. Therefore, I don't even get to the medical parts."
[6] In light of the other grounds stated in this dissenting opinion, I would not consider the issue of whether the trial court's failure to grant a continuance of the trial for consideration of Dr. Adams's testimony would, standing alone, have constituted reversible error.