This is a workmen's compensation case.
On January 13, 1984, Jessie Stepp suffered a back injury arising out of and in the course of his employment with Beech Gap, Inc. United States Fidelity and Guaranty Company (USF 
G), Beech Gap's workmen's compensation carrier, paid for Stepp's medical expenses resulting from his injury. In 1985, Stepp had surgery performed on his lower back. In 1986, Dr. N.W. Henry, a rehabilitation expert, found Stepp to be totally disabled, with an extremely poor prognosis, and found that Stepp had reached maximum medical improvement. On December 4, 1986, Stepp settled his claim for workmen's compensation benefits with Beech Gap. Pursuant to the settlement agreement, USF G was required to cover Stepp's medical expenses related to his 1984 back injury, and USF G paid Stepp $40,000 as a lump-sum settlement. USF G also agreed to pay Stepp an annuity of $399.99 per month, which was guaranteed through November 30, 2006.
On April 30, 1990, Stepp's sixth day of employment at Jove Engineering as a fitter/welder, Stepp was required to use a sledgehammer to pound out the creases along the welded seams of 300- to 400-pound metal pipe stands. In performing this duty, *Page 714 
Stepp was required to manually move the pipe stands. During the night of April 30, Stepp experienced pain in his lower back; that pain radiated down into his legs. The next morning, May 1, 1990, Stepp went to St. Vincent's emergency room for treatment. Stepp's wife informed his supervisor at Jove Engineering of his injury.
On August 3, 1990, Stepp filed a complaint in the Jefferson County Circuit Court for workmen's compensation benefits based on his 1990 injury, naming Beech Gap, USF G, and Jove Engineering as defendants.
Following an ore tenus proceeding, the trial court entered a judgment, stating in pertinent part:
 "8. The court finds that as of April 30, 1990, Stepp had an ongoing chronic lumbar back problem which resulted from the 1984 injury and surgery in 1985. This is made clear by the fact that Stepp had been seeing a chiropractor for low back manipulations and adjustments on a regular and frequent basis, and had received a manipulation on April 25, 1990, just five days prior to the date of the lifting incident at Jove [Engineering]. It is difficult to characterize Stepp's injury as an aggravation, or a new injury, or a recurrent problem since, Stepp had never been without a problem since 1984. The court finds that Stepp aggravated his low back condition in the April 30, 1990, incident, and that the injury was a recurrence of the same back problem Stepp had been suffering from since 1984. In fact, Dr. Harris testified that from a medical standpoint, Stepp was not any worse off following the 1990 incident than he was the last time he had seen Stepp in 1987. Dr. Harris' diagnosis of the April 30, 1990 injury was acute back strain.
 ". . . [T]hat the total permanent rating or 100% loss of earning capacity rating is the combined effect of the previous (1984) and subsequent (1990) injury. The court attributes 10% of the loss of earning capacity to the incident at Jove [Engineering] in 1990.
 ". . . [T]hat the employee is permanently and totally disabled as the result of two separate injuries in two different employments. . . . [T]hat the second employer, Jove [Engineering], had knowledge of the previous 1984 injury, and that the 1984 injury was of a disabling nature which adversely affected Stepp's employability in accordance with § 25-5-58 Code of Alabama (1975).
". . . .
 "As the result of Stepp's 1984 injury incurred during his employment with Beech Gap, the court finds that the employee suffered a 90% loss of earning capacity. As the result of Stepp's injury on April 30, 1990, incurred during his employment at Jove [Engineering], the court finds that Stepp suffered a 10% loss of earning capacity. Stepp has not been paid any disability benefits by Jove [Engineering]. The court orders that Jove [Engineering] pay to Stepp permanent partial disability benefits from April 30, 1990 through the date of this order. . . .
". . . .
 "The court orders that Jove [Engineering] shall pay medical expenses incurred by Stepp which remain outstanding as a result of the April 30, 1990, incident, which consists of the St. Vincent's Hospital bill . . ., Dr Harris' bill . . ., and the bill from Radiology Associates. . . . The remaining outstanding medical expenses shall be paid by USF G. The court further orders that USF G shall pay Stepp's future medical and surgical treatment and attention in accordance with § 25-5-77, Code of Alabama (1975). This includes the other bills submitted into evidence by Stepp during the trial of this case and all future medical expenses that are incurred by Stepp and that are related to the 1984 injury and subsequent surgery."
USF G appeals, contending that the trial court committed error by not dismissing USF G from this case and that the trial court misapplied the "last injurious exposure" rule.
Pursuant to Rule 20(a), A.R.Civ.P., "[a]ll persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of *Page 715 
transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Stepp sustained successive injuries to his back in the course of his employments; it was necessary to determine which employer would be responsible for his medical treatment. USF G had an interest in the determination of which employer would be responsible for Stepp's medical treatment, because it is required to provide Stepp medical benefits for injuries resulting from his 1984 back injury. Therefore, we cannot hold that the trial court erred by not dismissing USF G as a party to this case.
Under the "last injurious exposure" rule, "liability falls upon the carrier covering [the] risk at the time of the most recent injury bearing a causal relation to the disability."North River Insurance Co. v. Purser, 608 So.2d 1379, 1382
(Ala.Civ.App. 1992). The trial court must determine whether the second injury is "a new injury, an aggravation of a prior injury, or a recurrence of an old injury; this determination resolves the issue of which insurer is liable." Id.
A court finds a recurrence when "the second [injury] does not contribute even slightly to the causation of the [disability]." 4 A. Larson, The Law of Workmen's Compensation, § 95.23 at 17-142 (1989). "[T]his group also includes the kind of case in which a worker has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion." 4 A. Larson, § 95.23 at 17-152. A court finds an "aggravation of an injury" when the "second [injury] contributed independently to the final disability." 4 A. Larson, § 95.22 at 17-141. If the second injury is characterized as a recurrence of the first injury, then the first insurer is responsible for the medical bills; however, if the injury is considered an aggravation of the first injury, then it is considered a new injury and the employer at the time of the aggravating injury is liable for the medical bills and disability payments. North River, supra.
In reviewing workmen's compensation cases, this court uses a two-step standard of review. Initially, this court must determine if there is any legal evidence to support the trial court's findings; if such evidence is found, then this court must determine whether any reasonable view of that evidence supports the judgment of the trial court. Ex parte EastwoodFoods, Inc., 575 So.2d 91 (Ala. 1991).
The testimony of Stepp and Dr. William A. Chandler, his chiropractor, reveals that Stepp's condition improved between 1984 and 1987, when he returned to the work force. Stepp further testified that he accepted the job at Jove Engineering with the understanding that he would not be required to do any heavy lifting. Stepp had performed his job for six days when he injured his back. Stepp also testified that since his injury on April 30, 1990, he can no longer do his normal activities, such as yard work, which he did before the injury.
Stepp's treating physician, Dr. Rex Harris, an orthopedic surgeon, testified that Stepp's 1990 injury was a recurrence and an aggravation of his 1984 injury but that Stepp's condition was no worse than it was in 1987, the last time that Dr. Harris had seen Stepp before his 1990 injury. Additionally, Dr. Fain A. Guthrie, a rehabilitation counselor, testified that based on his examinations of Stepp, Stepp's medical records, and Dr. Harris's deposition testimony, Stepp was 100% disabled from a vocational standpoint.
The record contains legal evidence to support the trial court's findings, and we conclude that a reasonable view of the evidence supports the judgment of the trial court. Ex parteVeazey, 637 So.2d 1348 (Ala. 1993). Therefore, we must affirm.
AFFIRMED.
YATES, J., concurs.
THIGPEN, J., concurs in the result. *Page 716