Rhonda L. Patterson sued her employer, Liz Claiborne, Inc., seeking workers' compensation benefits for an on-the-job injury she contended she sustained on April 7, 2000. Liz Claiborne answered and denied liability. The trial court conducted an ore tenus hearing. At the close of Patterson's presentation of evidence, Liz Claiborne moved for a judgment as a matter of law.
On September 6, 2001, the trial court entered a judgment granting Liz Claiborne's motion for a judgment as a matter of law. Patterson filed a postjudgment motion, and the trial court denied that motion. Patterson timely appealed on December 14, 2001. The appeal was originally assigned to another judge on this court on May 13, 2002; it was reassigned on May 28, 2003.
Patterson worked for Liz Claiborne as a packer. In that job position, she folded *Page 183 
boxes, packed them with clothing, and closed the boxes. Patterson testified that on April 7, 2000, she experienced back pain while closing a box. Patterson reported the April 7, 2000, incident to her supervisor at Liz Claiborne. On her report of injury, Patterson stated that she felt pain travel through her back and down her legs. In that report, Patterson also stated that "[t]he injury is an ongoing injury since 1998."
Dr. Kirven Ulmer, one of Patterson's doctors, released her to work with no restrictions on June 30, 2000. Patterson returned to work at Liz Claiborne for a short period of time, and then she took "family medical leave" from her employment. At the time of the trial, Patterson had not returned to work at Liz Claiborne, but it is undisputed that Liz Claiborne had not terminated her employment.
Patterson had suffered several on-the-job back injuries before the April 7, 2000, incident. Patterson suffered a back injury in May 1996, another in September 1997, and a third in December 1998. It is not clear whether Patterson received workers' compensation benefits for the first back injury, but she did receive benefits for the 1997 and 1998 back injuries.
Patterson claimed at trial that she suffered a "new injury" on April 7, 2000, and that her medical records indicated that she had a disk herniation that was not present at the time of her previous back injuries. Patterson claimed to be totally disabled as a result of the April 7, 2000, incident; she testified that she was in severe pain and that "I can't do nothing."
There were a number of inconsistencies between Patterson's testimony at trial and her actions between the time of the April 7, 2000, incident and the August 23, 2001, trial. Although at trial she claimed to have suffered a new injury, when originally reporting the injury to Liz Claiborne, Patterson had indicated that the pain she experienced on April 7, 2000, was related to her 1998 injury. Patterson admitted at trial that she told one of her doctors that the injury for which she was seeking treatment began in 1998.
Patterson insisted at trial that she was disabled and that she was unable to do anything because of her claimed new injury and the pain it caused. However, Patterson admitted to submitting an application for disability benefits on July 20, 2000. On that application, Patterson stated that she had suffered an on-the-job injury on December 20, 1998, and did not mention the April 7, 2000, incident. Later, on November 3, 2000, Patterson applied for unemployment-compensation benefits. On her November 2000 unemployment-compensation application, Patterson asserted that she was not disabled, that she was available to work full-time, and that she was willing to travel 40-50 miles one way to a job. In addition, Patterson denied, on her unemployment-compensation application, that she had received or applied for workers' compensation benefits. On questioning from the trial court, Patterson testified that she lied on her application for unemployment-compensation benefits because she was "desperate."
Patterson asserted at trial that she was unable to work or return to work at Liz Claiborne. Nevertheless, Patterson admitted filling out an application for employment with Herff Jones, a potential employer, while she was on "family medical leave" from Liz Claiborne. The date of that application was March 14, 2001, just a few months before the trial of this matter. On that employment application, Patterson indicated that she was available to work on a full-time basis, at any available position, beginning March 15, 2001. When the trial court inquired as to why she did not return to work at Liz Claiborne rather than apply for employment with Herff Jones, Patterson answered that she had gone with a friend who was applying for employment at Herff Jones and that she had filled out the employment application because she was "just sitting [t]here."
In its September 6, 2001, judgment, the trial court detailed the above-mentioned inconsistencies, and it concluded: *Page 184 
 "The Court has heard the testimony of [Patterson] and finds that she has been untruthful in her testimony in stating that she cannot perform any work due to severe pain. The Court has reviewed all of the evidence and finds that [Patterson] is not credible or truthful in her testimony."
(Emphasis added.)
In addition, in its September 6, 2001, judgment, the trial court made the following findings and conclusions:
 "9. The Court has reviewed all available documentation concerning the treatment [of Patterson] by her physicians, records from her personnel file, and the applications which she has submitted to both the unemployment compensation commission and Herff Jones. The Court hereby expressly finds that [Patterson] did not sustain an accident within the meaning of the Alabama Workers' Compensation Act on April 7, 2000. [Patterson] did not sustain an event or occurrence which would give rise to a claim against [Liz Claiborne] for any incident which may have occurred on April 7, 2000. Moreover, the Court finds that the episode of back pain was a recurrence as defined by U[nited States Fidelity Guaranty Co.] v. Stepp, 642 So.2d 712 (Ala.Civ.App. 1994). Whatever pain [Patterson] experienced on April 7, 2000, did not contribute to her overall disability and all medical treatment relating to her low back should relate back to the previous workers' compensation carrier, Hartford Insurance Company.
 "10. At the close of [Patterson's] case, [Liz Claiborne] moved for a directed verdict. After careful consideration of the evidence presented at the close of [Patterson's] case, it is clear to the Court that the motion is due to be granted and that [Patterson] cannot sustain her burden of proof that an accident occurred on April 7, 2000, which arose out of and within the course of her employment. Moreover, any episode of pain experienced on that date relates back to the December 1998, injury for which medicals are still open.
 "Judgment is hereby entered in favor of [Liz Claiborne] on [Patterson's] complaint, with costs taxed as paid."
(Emphasis added.)
On appeal, Patterson argues that the trial court erred in entering a judgment as a matter of law in favor of Liz Claiborne because, she asserts, the trial court made comments during the trial that indicated that it had determined that she "`did not sustain an accident' because she `did not sustain an event.'" (Emphasis in appellant's brief.) Patterson also contends that the trial court erred in determining that the April 7, 2000, incident was a recurrence of an earlier injury, rather than a new injury.
We cannot agree with Patterson's contention that the trial court concluded that Patterson did not suffer an accident because it found that there was no specific event that gave rise to Patterson's claim against Liz Claiborne. In its judgment, the trial court found that Patterson had not suffered an accident "within the meaning of the Alabama Workers' Compensation Act." In interpreting the term "accident" under the Workers' Compensation Act, this court has held that it is not necessary for a worker to show "a sudden, traumatic event"; rather, "[i]f an employee's job causes her injury, the injury is an `accident'" within the meaning of the Workers' Compensation Act. Dunlop Tire Rubber Co. v. Pettus,623 So.2d 313, 315 (Ala.Civ.App. 1993). See also Ex parte Harris,590 So.2d 285, 287 (Ala. 1991) (a claimant must establish that the job caused the claimed injury, not that a violent *Page 185 
or unusual event resulted in the injury; "[t]he term `accident' is not a characterization of the method of injury, but the result thereof"). We will not presume that the trial court was unaware of that caselaw interpreting the meaning of the term "accident" within the context of the Workers' Compensation Act.
Further, the language of the trial court's judgment is consistent with the theory of the case advanced by Patterson throughout the trial of this matter. In its judgment, the trial court determined (1) that there had not been an accident "within the meaning of the Alabama Workers' Compensation Act" on April 7, 2000; (2) that no event or new occurrence had transpired; and (3) that the pain episode Patterson experienced on April 7, 2000, was a recurrence of one of her previous back injuries.
At the beginning of the trial, the parties characterized the issue for the trial court as follows:
 "[ATTORNEY FOR LIZ CLAIBORNE]: . . . [T]he only real issue and focus is whether or not this event on April 7th, 2000, was a recurrence, which relates it back to an old injury or injuries, or whether it was an aggravation, which means it is a new injury. And I think that is the real crux of the matter here today.
 "[ATTORNEY FOR PATTERSON]: I think that I would agree that that is correct insofar as it goes. It is a matter of whether or not it is a recurrence of an old injury, as he said, which — well, whatever. As your Honor may recall, I dropped or I told you that I was going to dismiss my alternative claim that it was a recurring injury.
"[THE COURT]: I remember.
 "[ATTORNEY FOR PATTERSON]: So what is left is whether or not it is an aggravation of that old injury or whether or not it is a new injury altogether."
(Emphasis added.) In commenting on the issue to which she would like the parties to confine their evidence, the trial judge stated that the issue before the court was "whether or not it is a new injury, an aggravati[on] or reoccurrence." During the trial, Patterson argued almost exclusively that the April 7, 2000, incident caused a "new injury." Several times, Patterson stated briefly that, "at the very least," the April 7, 2000, incident caused an aggravation of an old injury, but she did not argue or present any evidence on that theory, other than her assertion made at the beginning of the trial that an aggravation of a preexisting injury constituted a new injury.[2]
At the hearing on her postjudgment motion, Patterson argued that the trial court erred in determining that she had not suffered a new injury because the trial court had stated frequently that there was no new "event" to cause an injury. During that hearing, however, the trial court stated that it had reviewed the medical records the parties had submitted and that it had considered Patterson's testimony. We note that the trial court repeatedly stated that it found Patterson's testimony to be untruthful and that it reached its decision based largely on its finding that Patterson had "no credibility, zero."
In her brief on appeal, Patterson questions how the trial court could *Page 186 
possibly determine, given what she claims are "undisputed facts," that the April 7, 2000, incident was a recurrence. If the April 7, 2000, incident constitutes a recurrence of a previous injury, Patterson must seek treatment under her previous workers' compensation settlement, and she may not obtain a new judgment awarding additional workers' compensation benefits as a result of the April 7, 2000, incident. In this case, Liz Claiborne had acquired a new workers' compensation insurance carrier since the time of Patterson's 1998 injury. Pursuant to the trial court's September 6, 2001, judgment, the previous workers' compensation insurance carrier is responsible for paying for Patterson's medical treatment related to both the December 1998 injury and the April 7, 2000, incident.
 "Under the `last injurious exposure' rule, `liability falls upon the carrier covering [the] risk at the time of the most recent injury bearing a causal relation to the disability.' North River Insurance Co. v. Purser, 608 So.2d 1379, 1382 (Ala.Civ.App. 1992). The trial court must determine whether the second injury is `a new injury, an aggravation of a prior injury, or a recurrence of an old injury; this determination resolves the issue of which insurer is liable.' Id.
 "A court finds a recurrence when `the second [injury] does not contribute even slightly to the causation of the [disability].' 4 A. Larson, The Law of Workmen's Compensation, § 95.23 at 17-142 (1989). '[T]his group also includes the kind of case in which a worker has suffered a back strain, followed by a period of work with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion.' 4 A. Larson, § 95.23 at 17-152. A court finds an `aggravation of an injury' when the `second [injury] contributed independently to the final disability.' 4 A. Larson, § 95.22 at 17-141. If the second injury is characterized as a recurrence of the first injury, then the first insurer is responsible for the medical bills; however, if the injury is considered an aggravation of the first injury, then it is considered a new injury and the employer at the time of the aggravating injury is liable for the medical bills and disability payments. North River, supra."
United States Fid. Guar. Co. v. Stepp, 642 So.2d 712, 715
(Ala.Civ.App. 1994).
Patterson contends that she had no problems with her back for the year before the April 7, 2000, incident, and that, therefore, "[t]here can be no dispute that [her] job caused her injury, and therefore, her injury was an accident."[3] She contends that hers is not a situation in which she continued to work at Liz Claiborne with continuing symptoms from her December 1998 injury, followed by an incident that caused a recurrence of pain from that injury. See United States Fid. Guar. Co. v. Stepp, supra. Patterson contends that "if a claimant establishes by thenecessary evidence that the job caused, or contributed *Page 187 
to, the injury or death, the claimant has established causation, both legal and medical"; in support of that proposition, she cites Trinity Industries, Inc. v.Cunningham, 680 So.2d 253, 259 (Ala.Civ.App. 1995), affirmed, Ex parteTrinity Industries, Inc., 680 So.2d 262 (Ala. 1996), a case addressing a nonaccidental injury.
However, there were conflicts in the evidence from which the trial court could reasonably determine that Patterson lacked credibility. The credibility of a witness is a determination left solely within the discretion of the trial court, and this court may not substitute its own judgment as to the issue of credibility. Hooker Constr., Inc. v. Walker,825 So.2d 838 (Ala.Civ.App. 2001). If a witness does not testify truthfully, the trial court may disregard some or all of the witness's testimony. Clemons v. Clemons, 627 So.2d 431 (Ala.Civ.App. 1993). The trial court may also consider a witness's untruthfulness in determining the weight it will afford other evidence presented by the witness.DiIorio v. Long, 839 So.2d 650 (Ala.Civ.App. 2001).
In Tackett v. Elastic Corp. of America, 557 So.2d 1281 (Ala.Civ.App. 1990), Tackett sought workers' compensation benefits from her employer. In its judgment, the trial court found that Tackett had made misrepresentations in her deposition or to other people, including the physician who conducted her preemployment physical. The trial court determined that no on-the-job injury had occurred "based explicitly on Tackett's lack of credibility," and, therefore, it denied her claim for workers' compensation benefits. Tackett, 557 So.2d at 1284. This court affirmed, noting that the trial court had the "sole responsibility of weighing the evidence." Id.
The trial court in this case was not bound to believe Patterson's testimony, even that testimony it did not specifically mention in its judgment as lacking credibility. See DiIorio v. Long, supra; Clemons v.Clemons, supra. Patterson had insisted that she suffered a new injury and that, as a result of that alleged injury, she was permanently, totally disabled. However, Patterson's assertions on her applications for disability benefits and unemployment compensation, as well as her application for employment with an employer other than Liz Claiborne, could be viewed as contradicting the testimony Patterson provided at the trial. The trial court specifically found Patterson's explanations of those contradictions to be implausible. The trial court made many specific findings regarding its determination that Patterson lacked credibility and had testified untruthfully. Therefore, it appears that although the trial court believed Patterson might have suffered an episode of back pain on April 7, 2000, it did not believe that that episode was more than temporary or that it caused or contributed to a new injury so as to constitute a compensable "accident" under the workers' compensation statute. See Dunlop Tire Rubber Co. v. Pettus, supra.
The trial court's judgment indicates that it merely rejected Patterson's argument that her job caused a new injury on April 7, 2000. It is clear from the language of the trial court's judgment that the trial court determined that the April 7, 2000, incident did not cause or "contribute even slightly" to any injury, and, therefore, that that incident constituted a recurrence of Patterson's earlier injury. SeeUnited States Fid. Guar. Co. v. Stepp, 642 So.2d at 715. Given its findings regarding Patterson's lack of credibility, we cannot say that the trial court erred in denying her claim for workers' compensation benefits. See Tackett v. Elastic Corp. of America, supra. *Page 188 
Patterson last argues that the trial court erred in refusing to grant her request for a continuance in order to allow one of her doctors to testify. At the beginning of the August 23, 2001, trial, Patterson's attorney informed the trial court that Dr. Kynard Adams would testify in person, and that he expected Dr. Adams to arrive in court between 11:30 a.m. and 12:00 p.m. Patterson's attorney requested that the trial court allow Dr. Adams to testify "out of order" when he arrived, and the trial court agreed to that request. However, at the close of Patterson's presentation of evidence, her attorney moved for a continuance because Dr. Adams had telephoned to state that he had a medical emergency and could not be present at the trial to testify. Dr. Adams had not been subpoenaed and had not been deposed. The trial court denied Patterson's request for a continuance.
In denying Patterson's request for a continuance of the trial, the trial court stated, in essence, that, because of the problems with Patterson's lack of credibility, it did not need to hear Dr. Adams's testimony. In her brief on appeal, Patterson asserts only cursorily that Dr. Adams's testimony "probably would have affected the result of the trial." See Ex parte Driver, 258 Ala. 233, 237, 62 So.2d 241, 243
(1952). However, the comments made by the trial court during the arguments on that motion and at the hearing on Patterson's postjudgment motion clearly indicate that that assertion is without merit because the trial court based its determination largely on its impression of Patterson and her apparent lack of truthfulness.
Continuances are not favored, and the decision whether to grant or deny a motion for a continuance is within the discretion of the trial court.In re Vosyka, 494 So.2d 421 (Ala.Civ.App. 1986). The decision whether to grant or deny a continuance will be reversed on appeal only upon a showing of "a gross abuse" of the trial court's discretion. Autery v.Autery, 515 So.2d 708, 709 (Ala.Civ.App. 1987). In order to be entitled to a continuance, the movant must establish:
 "(1) that the expected evidence will be material and competent; (2) a probability that the testimony can be obtained at a future date to which the cause may be continued or postponed; (3) due diligence having been exercised by the movant to secure the absent witness or evidence; (4) the expected evidence must be credible and will probably affect the result; (5) the evidence must not be merely cumulative or impeaching; [and] (6) that the motion for continuance is not made merely for purposes of delay."
Ex parte Driver, 258 Ala. at 237, 62 So.2d at 243. Given the record on appeal, we cannot say that the trial court's refusal to grant a continuance in this matter constituted a gross abuse of its discretion.Autery v. Autery, supra.
AFFIRMED.
PITTMAN, J., concurs specially.
CRAWLEY, J., concurs in the result.
YATES, P.J., and MURDOCK, J., dissent.
[2] On appeal, Patterson has not maintained that the April 7, 2000, incident resulted in an aggravation of her earlier injuries, or that that incident in any way worsened or contributed to an earlier injury or disability. It is not the function of this court to advocate a position on behalf of an appellant or to create a legal argument for the appellant. McLemore v. Fleming, 604 So.2d 353 (Ala. 1992); Spradlin v.Spradlin, 601 So.2d 76 (Ala. 1992).
[3] A doctor who reviewed Patterson's May 31, 2000, MRI found a "dis[k] herniation" at L2-L3. Dr. Donovan Kendrick, who examined Patterson and reviewed that same MRI, determined that Patterson had a "small midline dis[k] bulge" at the same location, as well degenerative changes at L4-5 and L5-S1 "without frank herniation." Dr. Kendrick concluded that Patterson had "degenerative dis[k] disease which would be consistent with her history of back pain." The trial court found in its judgment that Dr. Kendrick had determined that Patterson did not have a herniated disk. This court must determine whether the trial court's judgment is supported by the evidence, not whether it would have reached the same result given the same evidence. See Wal-Mart Stores, Inc. v. Baker,751 So.2d 519 (Ala.Civ.App. 1999).