I believe the trial court's judgment is supported by substantial evidence and therefore should be affirmed. Based on my reading of the judgment, as well as the record, it appears that this is a case in which the employee understood from the employer's representatives and others with whom she consulted that, because her injury resulted from a pre-existing condition and not a "specific incident" while at work, and because of a rule announced by the employer that it must be given notice of workers' compensation claims within 72 hours of the injury, she should pursue disability benefits rather than workers' compensation benefits. Accordingly, the trial court found that the employee should not be estopped from subsequently pursuing workers' compensation benefits when she learned that her injury was, in fact, compensable under the Workers' Compensation Act, even though she had by then collected disability benefits for over a year.
The genesis of the dispute in this case evidently lies in a misunderstanding on the part of the employer as to the import, for purposes of entitlement to workers' compensation benefits, of whether an employee's injury arises from a "sudden onset" of pain or a "specific incident."[5] In particular, the employee focuses this court's attention on the following statement from a letter written on January 20, 2000, by the employee's physician, Dr. William Crotwell: "[t]he worker's problem is not a sudden onset of pain due to a specific incident."
It is well established, however, that a "sudden onset of pain" or a "specific incident" is not necessary for there to be a compensable injury under Alabama's Workers' Compensation Act.See, e.g., Patterson v. Liz Claiborne, Inc., 872 So.2d 181, 189
(Ala.Civ.App. 2003) (Murdock, J., dissenting and reviewing applicable authorities, in which Yates, P.J., concurred, and in which Crawley, J., concurred as to the "application of the term `accident' as that term is defined in the field of workers' compensation law"). Nor is it necessary that the employee's employment be the sole cause of his or her disability. See Exparte Trinity Industries, Inc., 680 So.2d 262, 270 (Ala. 1996) (an injury is compensable as long as the injury contributes to or aggravates the employee's condition). Thus, even if there is some underlying or preexisting condition that is not work related, we first look to see if that preexisting or underlying condition prevented the employee from performing *Page 435 
his or her job duties in a normal manner. If it did not, the condition would not necessarily disqualify the employee from receiving workers' compensation benefits under the "arising out of and in the course of" requirement of § 25-5-1(9), Ala. Code 1975. Tarver v. Diamond Rubber Prods. Co., 664 So.2d 207,210-11 (Ala.Civ.App. 1994) (citing Blue Bell, Inc. v. Nichols,479 So.2d 1264 (Ala.Civ.App. 1985)). More to the point, for purposes of this case, it has been held that a "`[a] preexisting condition will not affect a [workers'] compensation award if a job-related injury combined with that preexisting condition to produce disability.'" Tarver, 664 So.2d at 210 (quotingReynolds Metals Co. v. Stults, 532 So.2d 1035, 1038
(Ala.Civ.App. 1988)) (emphasis added).[6]
Therefore, the portion of Dr. Crotwell's letter upon which this court should be focused is the language emphasized in the following sentence from that letter: "The patient suffers pain due to a combination of gradual accrual, aggravated by the aging process, and the pushing and pulling of patients involvedin the daily activities of her job." (Emphasis added.) The "pushing and pulling of patients involved in the daily activities of her job" necessarily refers to the performance by Keao of her duties with Mercy Medical, for whom she had worked for approximately five and one-half years at the time Dr. Crotwell wrote this statement.[7]
It is with the foregoing in mind that I disagree with the implication of the main opinion's statement that, after the above-referenced letter from Dr. Crotwell was written, both the employee and the physician "continued" to state that the employee's injury was not work related. Not only does the letter in question state that the employee's injury was work related, more than one other form signed by the employee's physician before and after this letter contained statements to the effect that the employee's injury was work related and had had its onset on December 15, 1999. Nor do I find in the record that the employee consistently made statements that her injury was not work related.
On a Mercy Medical form completed by the employee and Dr. Crotwell and dated January 3, 2000, Dr. Crotwell indicated that the employee's injury was work related and that its onset was December 15, 1999. While it is true that on February 11, 2000, Dr. Crotwell checked a "No" box in response to a question on an attending physician's statement of whether the "condition [is] due to injury or sickness related to the patient's employment," on a long-term disability evaluation form filled out by the employee's treating physician on March 27, 2000, Dr. Crotwell wrote a note stating merely that the plaintiff's condition was "a long-term aggravation of her previous *Page 436 
problems," a statement consistent with the trial court's finding that the employee suffered a compensable injury. Other statements on September 13, 2000, and February 20, 2001, by different attending physicians, stated that the employee had been treated for the same "or similar" condition in 1997, a statement that does not exclude the possibility that the specific portion of her back injured in 1999 was different than that injured in 1997 or that the 1999 incident resulted in an aggravation of her previous condition.
Likewise, on the same January 3, 2000, disability form referenced above, the employee wrote:
 "After positioning and turning all patients on my unit (with another nurse), I first began having low back pressure and then later I began having tingling down my left leg.
". . . .
 "I have had prior problems with L2-3 disc in 1997, but this is new with L4-5 disc."
The record contains other forms completed and submitted by the employee in which she indicates that her injury was work related.
The medical evidence in this case includes the result of an MRI taken only a few days after the employee's injury. Before the employee's December 15, 1999, injury, the employee had had an MRI conducted sometime prior to the injury, which revealed only a bulging of her disk at the L2-3 level. At the time, this disk problem resulted in pain radiating down the employee's right leg. The MRI conducted several days after the employee was injured revealed a bulging or herniation of a disk in an entirely different location in the employee's back than had previously been discovered by any testing or diagnosis, namely the L4-5 level. Further, the employee testified that the pain she experienced following her December 15, 1999, accident was different than the pain she had experienced before that date, including the fact that the pain radiated down her left leg after December 15, 1999.
Based on my review of the foregoing evidence and the other evidence in the record before us, I cannot agree that there is not substantial evidence to support the trial court's findings. The trial court made very thorough findings in this case, and I think it is important to set them out in some detail:
"FINDINGS OF FACT
 "1. Prior to December 15, 1999, Brenda Keao was a registered nurse employed by Mercy Medical. Her job duties routinely required her to lift patients; roll them over to prevent bed sores; assist them with bodily functions; assist physicians and other health care [providers] with their overall medical treatment, etc. Her job duties placed physical demands on her in the routine performance of her day to day assigned duties. . . .
 "2. Prior to December 15, 1999, Plaintiff suffered an injury to her back while performing her duties at Mercy Medical. This injury was to the L2-3 area of her back. She was treated by an orthopaedic surgeon, Dr. William Crotwell, who returned her to work with no restrictions or modifications on her work activities. From the time she was released by Dr. Crotwell in 1997 until December 15, 1999, Plaintiff performed all of the usual and customary job duties assigned to her as a registered nurse at Mercy Medical.
 "3. The court notes that in January and February of 1999, Plaintiff received minor treatment for her back which was effective in treating her back pain. On *Page 437 
each occasion, she was released to full duty by her treating physician, Dr. Crotwell, without restrictions, and she returned to performing the normal and routine job duties of a registered nurse up until December 15, 1999.
 "4. On December 15, 1999, Plaintiff suffered an injury to her back. On that date, she was positioning and turning all of the patients on her unit. Plaintiff noticed pressure in her low back which ultimately led to a tingling down her left leg. She did not report this injury right at the time it happened because she thought the problem would go away. However, the Court notes that the next day the pain was worse. The Court specifically finds that she reported her injury to Dee Williams, her supervisor, on December 16, 1999.
 "5. Plaintiff testified that she worked through the 16th of December, 1999, hoping that her upcoming three days off would allow her back to heal so that she could return to work.
 "6. Plaintiff's back pain did not subside, and she returned to her orthopaedic physician, Dr. William Crotwell, for treatment.
 "7. She initially saw Dr. Tim Revels who is a partner of Dr. Crotwell on December 17, 1999. Dr. Revels examined her and prescribed some anti-inflammatory medication and directed that she return on the 20th of December to see Dr. Crotwell, which Plaintiff did.
 "8. On her visit of December 20, 1999, Dr. Crotwell ordered an MRI of her lumbar spine. This was performed on December 21, 1999. This MRI revealed that Plaintiff clearly suffered a new injury in the L4-5 area of her back. By comparison, the 1997 MRI which she had performed revealed a minimal bulge at L2-3 level but did not show any deficit at the L4-5 level. There was no medical evidence that she sustained any injury to the L4-5 area of her back prior to December 15, 1999. There was no degenerative changes in the L4-5 area. However, degenerative changes were noted at the L2-3 level."9. This finding is supported by Dr. Crotwell's testimony that the 1997 injury was to Plaintiff's L2-3 area of her back. Dr. Crotwell did not note any injury to the L4-5 area when he treated her prior to December 15, 1999. The treatment that she received both in January and February 1999 was to the L2-3 area of her back and not the L4-5 area. . . .
 "10. When Plaintiff saw Dr. Crotwell on December 20, 1999, the clinical history revealed a new injury to a completely different level in her back. The clinical picture suggested an injury to a lower level in her back than the prior L2-3 injury.
". . . .
"CONCLUSIONS OF LAW
 "1. The Court determines that Brenda Keao did in fact suffer an injury which she sustained within the line and scope of her employment while working for Mercy Medical on December 15, 1999. The Court noted that she had been working with patients on that day when she began to experience pain in her back radiating down her back into her left leg. Although, Keao thought it might be a flare up of the L2-3 injury she sustained in 1997, Dr. Crotwell stated that her complaints were coming from a different level and was a new injury. Dr. Crotwell pointed to a new problem in her lower back. Given the history of the December 15, 1999, injury, along with his examination and MRI findings, Dr. Crotwell determined that Keao's problems at the L4-5 level were *Page 438 
caused by the December 15, 1999 incident.
 "2. Dr. Crotwell never placed any work related work restrictions on Keao prior to December 15, 1999. Brenda was performing all of the usual and customary job duties assigned to her as a registered nurse at Mercy Medical.
". . . .
 "4. The Court finds in this case that there was no doubt that Brenda was fully performing the job duties assigned to her as a registered nurse until she was injured on December 15, 1999. Plaintiff testified that she was able to perform all of her job duties prior to the accident of December 15, 1999. Although she had intermittent complaints of back pain for which she sought medical treatment, none of her complaints or problems kept her from performing the normal and usual customary job duties assigned to her as a nurse at Mercy Medical."
(Emphasis added.)
Nonetheless, the main opinion takes the position that the employee should be estopped from seeking workers' compensation benefits in this case.
Whether a party should be equitably estopped from asserting a claim turns on factual issues. Equitable estoppel requires proof of three factual elements: (1) the actor communicates something in a misleading way either by words, conduct, or silence; (2) the other relies on the communication; and (3) the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct. Lambert v. MailHandlers Benefit Plan, 682 So.2d 61 (Ala. 1996); Talladega CityBd. of Educ. v. Yancy, 682 So.2d 33 (Ala. 1996). Unless only one reasonable inference can be drawn from the evidence presented, the question whether the evidence in a given case adequately establishes estoppel is generally one for the trial court, as the fact-finder, to decide. Haginas v. Haginas, 598 So.2d 1334
(Ala. 1992); Cobb v. City of New Hope, 682 So.2d 1375
(Ala.Civ.App. 1996). See generally Hinds v. Hinds,887 So.2d 267 (Ala.Civ.App. 2003).
Again, the employer urges this court to view Dr. Crotwell's January 20, 2000, letter as if it indicates that the employee's condition is not work related, a view which, as discussed above, is incorrect. Moreover, the main opinion concedes that there is a conflict in the evidence as to whether the employer instructed the employee to obtain that letter, worded as it is, from Dr. Crotwell, or whether the employee decided to do this on her own. The trial court, as the fact-finder, made credibility determinations, decided what weight to assign to what evidence, and resolved this and other conflicts in the evidence relating to the issue of estoppel. Based thereon, it made the following findings of fact, and reached the following conclusions of law, which, again, I find supported by substantial evidence in the record:
"FINDINGS OF FACT
". . . .
 "11. The Court notes that Mercy Medical had a policy with respect to workers' compensation claims. According to testimony received by Mercy Medical, workers' compensation cases had to be reported within 72 hours of the occurrence. This was substantiated by Harry Bishop and Darbi Turley who testified in this case. Harry Bishop is the Director of Human Resources at Mercy Medical and is over both the benefits section and the workers' compensation section of employee benefits at Mercy Medical. Bishop testified that Mercy Medical had the 72 hour policy *Page 439 and, as far as he knew, Ms. Keao was not told that she could file a workers' compensation claim after the 72 hour time period.[8] The Court also notes that Darbi Turley was over the disability benefits section for Mercy Medical. She testified that she knew that Mercy Medical had this 72 hour policy. She also testified that as far as she knew, Ms. Keao was not told that she could file a workers' compensation claim after the 72 hour time period.
 "12. By the time Plaintiff learned that she had sustained a new injury to her back which was in a different area from her old injury, more than 72 hours had passed.
 "13. Plaintiff testified that she felt that the only avenue available for her to receive compensation benefits while she was off work was to file for short term disability benefits. She filled out a form for short term disability benefits and turned it in to Mercy Medical.
 "14. The Court finds that this form clearly indicates that Ms. Keao was reporting a new injury to her back which occurred while she was positioning and turning patients. The Court notes that the injury occurred on a specific date which was December 15, 1999. It also notes that the physician's portion of the form which had to be completed indicated that Brenda's injury arose out of her employment.
 "15. Plaintiff testified that she turned this form in to Darbi Turley to process. According to Ms. Keao, Ms. Turley told her that she needed a letter from Dr. Crotwell stating that her condition was not due to a specific incident but was caused by an ongoing degenerative changes. According to Ms. Keao, she was told specifically . . . what needed to be placed in that letter in order for short term disability benefits to be processed. According to the Plaintiff, she wrote down exactly what was told to her and gave this note to Dr. Crotwell. This note became a part of Dr. Crotwell's medical records. Ms. Keao testified that she took this letter to Dr. Crotwell and Dr. Crotwell prepared a letter at her request which provided the requested language.
 "16. The Court notes that Mercy Medical provided for its own short term disability benefits and the determination for approval of those benefits was by Mr. Harry Bishop who, as set forth above, was the director of Human Resources at Mercy Medical. The long term benefits were provided for by CIGNA which is an independent company.
 "17. The Court notes that the form used to apply for benefits for both short term benefits which were provided by Mercy Medical as well as long term benefits which were provided for by CIGNA were on CIGNA's form.
 "18. The Court notes that this form clearly indicates that Brenda sustained a job related accident which occurred within the line and scope of her employment and that it specifically refers to a specific incident which occurred on a specific date which set forth the immediate onset of pain and discomfort to an area of her body which had not previously been injured. The Court specifically finds that this form was provided to *Page 440 
Mercy Medical in the month of January, 2000.
 "19. The Court notes that Dr. William Crotwell, when he filled out the physician's portion of that form, clearly indicated that the injury was related to her employment.
 "20. The Court also notes that Mercy Medical had notice of this incident by virtue of the fact that this form was turned in to Mercy Medical and was endorsed by Mr. Harry Bishop who is the Director of Human Resources.
 "21. The Court notes that neither Mr. Bishop nor Ms. Turley ever informed Ms. Keao that she should file a claim for workers' compensation benefits. Instead, the Court finds that Ms. Keao was directed to reapproach Dr. Crotwell with specific language necessary in order to process the claim as a disability claim.
 "22. The disability benefits afforded Ms. Keao through both the short term and long term disability benefits were limited to a specific period of time.
 "23. This Court notes that if this matter were processed as a workers' compensation claim, there is no doubt that Ms. Keao would receive a greater benefit over a potentially longer period of time.[9]
 "24. Plaintiff's course of treatment indicates that Plaintiff was permanently and totally disabled. It is undisputed that Plaintiff's condition did not improve. Dr. Crotwell testified that it was subsequently determined that Brenda had a huge annular tear in her L4-5 disc. He testified that, as a result, she was totally disabled.
". . . .
"CONCLUSIONS OF LAW
". . . .
 "5. The Court also notes that Mercy Medical has taken the position that Plaintiff is estopped from receiving workers' compensation because she filed a claim for disability benefits. This Court specifically finds and concludes that in this case, Plaintiff suffered an injury to her back and that she is not estopped from pursuing her claim for workers' compensation benefits even though she has received disability benefits. In this case, Plaintiff specifically testified that the date of her accident was December 15, 1999. She described her work related activities of turning and positioning patients as being the cause of her injury. This was made clear on her application for disability which she submitted on January 3, 2000. In that application, Plaintiff stated that the date of the accident was December 15, 1999, and described that `after positioning and turning all of the patients on her unit, I first began having low back pressure and then later I began having tingling down my leg . . . I have had prior problems with the L2-3 discs in 1997 but this is new with the L4-5 discs.' This was also confirmed by Plaintiff's treating physician, Dr. William Crotwell.
". . . . *Page 441 
 "7. The last argument raised by the Defendant pertains to notice. Section 25-5-78, Code of Alabama (1975, as amended) required an injured worker to give notice of his or her injury. The Alabama Appellate Courts have consistently held that oral notice which informs an employer of an accident and injury is sufficient. American Tennis Courts, Inc. v. Hinton, 378 So.2d 235 (Ala.Civ.App. 1979). Gold Kist, Inc. v. Dumas, 442 So.2d 115 (Ala.Civ.App. 1983). Actual notice is equivalent to statutory notice and, in that regard, oral notice which places the employer on notice that an accident has occurred whereby an employee was injured is sufficient to establish the requirements of § 25-5-78. Blue Bell, Inc. v. Nichols, 479 So.2d 1264 (Ala.Civ.App. 1985). It is undisputed in this case that Keao told her supervisor on December 16, 1999, that she had injured her back the day before while lifting and turning patients. Where a worker informs his or her supervisor that he or she has suffered a job related accident and is injured, the notice requirement is satisfied. Robbins Tire Rubber Co. v. Jackson, 551 So.2d 1079 (Ala.Civ.App. 1989). In this case, Brenda testified that she reported this accident to her supervisor, Dee Williams, on December 16, 1999. The fact that she told her supervisor of this injury was not controverted at trial."
(Emphasis added.)
The issue of estoppel in this case was a factual issue for the trial court to decide. The trial court decided it. That this court might make a different decision has no bearing on our responsibility which, under the evidence presented, I believe is to affirm the trial court's findings.[10]
Finally, the majority relies on the case of Mid-South ElectricCo. v. Jones, 848 So.2d 998 (Ala.Civ.App. 2002), to support its conclusion that the employee should be estopped from seeking workers' compensation benefits. In my view, that case does not support the conclusion reached in the main opinion as to the facts of the present case.
First, I would note that the analysis set out in the opinion inMid-South Electric Co. was not joined by a majority of the judges of this court and, accordingly, is not binding precedent.
Moreover, Mid-South Electric Co. was not decided on the principle of estoppel. Indeed, nowhere in the opinion does the term "estoppel" even appear. Instead, the opinion in Mid-SouthElectric Co. concerns itself with the issue of notice under §25-5-78, Ala. Code 1975.
The opinion in Mid-South Electric Co. states that it wasundisputed in that case that the employee, though she gave notice of an injury to her employer, subsequently concealed from her employer the fact that her injury was work related. Among other things, the employee testified that she wanted to be treated by her own physician, and not one selected by her employer. According to the opinion in Mid-South Electric Co., this concealment had the effect of defeating the purpose of the notice required by § 25-5-78 because (1) "the employer did not have the opportunity to investigate the employee's injury," and (2) the employer "did not have the opportunity to monitor or manage the employee's medical treatment." 848 So.2d at 1000. *Page 442 
In essence, therefore, in Mid-South Electric Co. there was not effective notice as required under the Workers' Compensation Act.
As discussed above, the evidence supporting the trial court's judgment in the present case is markedly different. Without question, there was evidence of notice to the employer in the present case — indeed, repeated notice — of the work-related nature of the employee's injury. Moreover, the trial court readily could have found from the evidence that there was simply no effort by the employee in the present case to conceal the work-related nature of her injury as there was in Mid-SouthElectric Co. In fact, it was the employer, according to the trial court's factual findings, that was essentially responsible for the treatment of the employee's condition as one entitling her to disability benefits, rather than workers' compensation benefits. There is no evidence that the employee attempted to manipulate matters to avoid seeing a physician selected by her employer, or that she would have refused to do so had her employer designated a treating physician under the Workers' Compensation Act. In short, this is not a case, as was Mid-SouthElectric Co., in which the employee deprived the employer of an opportunity to investigate the employee's injury or to monitor the employee's medical treatment.
The trial court wrote a detailed judgment thoroughly explaining the reasons for its conclusion that the employee's injury arose out of and in the course of her employment and its conclusion that the employee was not equitably estopped from seeking benefits under the Workers' Compensation Act. Because I do not believe the result reached by the main opinion can be reached without reweighing the evidence as to the factual issues presented, I must respectfully dissent.
YATES, P.J., concurs.
[5] One example of the evidence to this effect is testimony describing a three-way conversation between Darbi Turley, Mercy Medical's benefits coordinator, the employee, and Nancy Olsen, the administrator of Mercy Medical responsible for the administration of workers' compensation claims. Turley testified as follows:
 "Q. . . . But I want you to tell the court what Mrs. Keao said about her back problem.
 "A. There was not a particular incident. It was just due to every day stress and strain.
 "Q. And based on that, did you accept the short term disability form?
"A. Yes, I did."
[6] Of course, if an employee is not fully disabled prior to a work-related accident, but is unable to perform his or her job duties in a normal manner prior to the accident, § 25-5-57(a)(4)e. and § 25-5-58, Ala. Code 1975, may be implicated.Kimbrell v. White, 863 So.2d 105, 116 (Ala.Civ.App. 2003) (holding that an employee should not be deemed to suffer from a preexisting infirmity for purposes of § 25-5-57(a)(4)e. and § 25-57-58, Ala. Code 1975, if the previous infirmity "`has not demonstrated itself as disabling and has not prevented the employee from performing his job in a normal manner'" (quotingHolt v. Dunlop Tire Co., 646 So.2d 74, 76 (Ala.Civ.App. 1994)).
[7] We are not presented in this appeal with an argument that the employee's injury should be treated as a cumulative-stress injury under § 25-5-80, Ala. Code 1975. Also, it is noteworthy that the next previous back injury of any significance experienced by the employee prior to December 15, 1999, was, itself, a back injury that the employee suffered in 1997 whileperforming her duties at Mercy Medical.
[8] The main opinion notes that the vice president of human resources for Mercy Medical testified that the company would not reject a claim filed after 72 hours had passed. The record contains evidence, however, from which the trial court could reasonably have inferred that employees such as Keao were advised of the company's 72 hour policy but were not told that in actuality the company would not reject a claim filed after 72 hours had passed.
[9] The trial court's conclusion that the employee should not be estopped from claiming benefits under the Workers' Compensation Act is bolstered by its recognition that the monthly benefits to which the employee would have been entitled if she had been receiving workers' compensation benefits based on a permanent, total disability would have been more than she received pursuant to her disability claim. In addition, had her claim been processed as a workers' compensation claim, the employee would have been entitled to medical benefits under the Workers' Compensation Act; she is not entitled to medical benefits under her disability plan.
[10] The foregoing discussion of the issue whether theemployee should be equitably estopped in this case is not affected by the analysis of our Supreme Court in Henson v. EstesHealth Care Center, Inc., 439 So.2d 74 (Ala. 1983), cited by the main opinion; as I read it, Henson presented different factual and legal issues than are presented in the present case.