PITTMAN, Judge.
This is the second set of appeals to reach this court involving the liability of Office Max, Inc., with respect to two injuries claimed to have been suffered by Sandra Richey (“the employee”) in the line and scope of her employment with Office Max and as to which the employee has sought benefits under the Alabama Workers’ Compensation Act, Ala.Code 1975, § 25-5-1 et seq. (“the Act”). We summarized much of the pertinent procedural history in our opinion in the first appeals taken by Office Max, Office Max, Inc. v. Academy, Ltd., 93 So.3d 955 (Ala.Civ.App.2012):
“The employee filed a civil action in July 2007, alleging that she had suffered injuries to her knees and to her shoulders in 2002 and in 2005, respectively, while in the line and scope of her employment with Office Max; she sought an award under the Act of ‘all compensation, disability, vocational, medical, rehabilitation and other benefits’ to which she was entitled to receive from Office Max. On three occasions, in June 2008, March 2010, and July 2010, the employee requested the issuance of orders directing Office Max to provide her with medical care from the treating physician authorized by Office Max, Dr. William Hartzog; the trial court granted those requests over the objections of Office Max. In arguments presented to the trial court at a hearing on the employee’s second request, during which hearing the trial court received testimony from the employee and admitted various medical documents into evidence, Office Max indicated that the employee had left her employment with Office Max and had taken a job with Academy, Ltd. (‘Academy’); Office Max contended that that *302 subsequent employment had caused or contributed to the employee’s knee and shoulder conditions such that, under the ‘last-injurious-exposure’ rule, see generally United States Fid. & Guar. Co. v. Stepp, 642 So.2d 712, 715 (Ala.Civ.App.1994), Academy should be deemed responsible for providing benefits to the employee under the Act. In response, counsel for the employee argued, and the trial court ultimately agreed, that Academy could properly be joined by Office Max as a third-party defendant.
“Office Max then filed a motion, which was granted, to implead Academy as a party, and it asserted a third-party claim against Academy in which it alleged that the employee had suffered a ‘re-injury’ or an aggravation of a previous shoulder injury and that Academy, rather than Office Max, should be held liable under the Act as to benefits owed to the employee with respect to the injuries she had alleged in her complaint. Academy moved for a summary judgment in its favor on Office Max’s third-party claim, contending that any injuries the employee might have sustained in the line and scope of her employment with Academy were merely recurrences of injuries originally sustained in the line and scope of the employee’s work for Office Max. Office Max filed a response in opposition to Academy’s summary-judgment motion, contending that a genuine issue of material fact existed as to whether the employee had suffered further damage while employed by Academy. The employee, for her part, filed a fourth motion seeking to compel medical treatment, averring that she had been diagnosed with a lesion in her left knee and that Office Max should be directed to authorize surgery to correct that condition. In separate orders entered on February 28, 2011, the trial court granted both Academy’s summary-judgment motion and the employee’s fourth motion to compel. Office Max filed separate notices of appeal as to those orders, and those appeals were consolidated by this court ex mero motu.”
93 So.3d at 956-57. Noting that “a trial court must make an express determination” indicating “that there is no just reason for delay and must make an express direction that a final judgment be entered in order for a ruling that ‘adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties’ to be a final, appealable judgment,” 93 So.3d at 957, we dismissed the previous appeals as having been taken from a nonfinal judgment, after which the trial court directed the entry of a final judgment as to its previous orders pursuant to Rule 54(b), Ala. R. Civ. P. Because that direction of entry of a final judgment eliminates the jurisdictional bar, previously noted by this court, to appellate review of the merits of the orders of which Office Max has complained, we now turn to the substantive questions presented.
Did the trial court properly enter a summary judgment in favor of Academy, Ltd.? Consideration of that issue necessarily implicates the question whether substantial evidence exists to support Office Max’s position that Academy, not Office Max, should be deemed liable, in whole or in part, for the health conditions of which the employee has complained. We note the following summary of the applicable standard of review:
“Appellate review of a summary judgment is de novo. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. A party moving for a summary judgment must make a prima facie showing ‘that there is no *303 genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.’ If the movant meets this burden, ‘the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by “substantial evidence.” ’ ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ”
Kohler Co. v. Miller, 921 So.2d 436, 444 (Ala.Civ.App.2005) (citations omitted). In this case, the substantive question as to which Academy has sought to demonstrate the absence of any genuine factual issue is the date of the employee’s last injurious exposure, the legal significance of which we summarized in United States Fidelity & Guaranty Co. v. Stepp:
“Under the ‘last injurious exposure’ rule, ‘liability falls upon the carrier covering [the] risk at the time of the most recent injury bearing a causal relation to the disability.’ The trial court must determine whether the second injury is ‘a new injury, an aggravation of a prior injury, or a recurrence of an old injury; this determination resolves the issue of which insurer is liable.’
“A court finds a recurrence when ‘the second [injury] does not contribute even slightly to the causation of the [disability].’ ‘[T]his group also includes the kind of case in which a worker has suffered a back strain, followed by a period of work ■with continuing symptoms indicating that the original condition persists, and culminating in a second period of disability precipitated by some lift or exertion.’ A court finds an ‘aggravation of an injury1 when the ‘second [injury] contributed independently to the final disability.’ If the second injury is characterized as a recurrence of the first injury, then the first insurer is responsible for the medical bills; however, if the injury is considered an aggravation of the first injury, then it is considered a new injury and the employer at the time of the aggravating injury is liable for the medical bills and disability payments.”
642 So.2d at 712, 715 (Ala.Civ.App.1994) (citations omitted).
In support of its summary-judgment motion, Academy adduced evidence tending to show that the employee had first begun working for Academy in June 2007, well after the employee had suffered injuries to her shoulders, chest, and knees in May 2002 and to her shoulders in October 2005; those submissions also showed that the employee had admitted, in response to Academy’s requests for admissions propounded to her, that she had been injured twice while acting in the line and scope of her employment with Office Max, that her symptoms had not changed during her employment with Academy, and that the 2002 and 2005 incidents (rather than any work she had performed for Academy) had caused injuries to her shoulders and knees as to which she had sought benefits under the Act from Office Max in her complaint.
In its evidentiary submissions in response to the summary-judgment motion filed by Academy, Office Max adduced the following pertinent evidence. As to the employee’s allegations of a work-related shoulder injury, Office Max demonstrated that the employee had complained in April 2006 of bilateral shoulder pain, prompting her authorized treating physician, Dr. William Hartzog, to diagnose her as having tendinitis or bursitis in both shoulders; however, Dr. Hartzog subsequently revised his diagnosis and performed surgery in January 2007 to repair a full-thickness rotator-cuff tear in the employee’s right shoulder. Dr. Hartzog referred the employee for a partial-impairment evaluation *304 in October 2007, after she had begun working for Academy, at which time the employee was assessed as having an eight percent impairment rating as to her right shoulder and a five percent impairment rating as to her entire body.
In November 2008, over a year after having started working for Academy, the employee returned to Dr. Hartzog’s office, complaining of “increasing symptoms” in her right shoulder while working at her new job hanging clothes. Dr. Hartzog opined that he would need to rule out a re-tear of the rotator cuff, and he ordered a magnetic-resonance-imaging (“MRI”) procedure as to the affected area. Dr. Hart-zog, in a December 4, 2008, clinic note, stated that the employee’s MRI images revealed a full thickness rotator-cuff tear “basically in the area of the previous tear” and recommended another surgical-repair procedure (which took place in February 2009); after that procedure, the employee underwent a functional-capacities evaluation at which the employee was assessed as having a nine percent impairment rating as to her right shoulder and a five percent impairment rating as to her entire body.
At his deposition, Dr. Hartzog, after testifying that the employee’s job duties at Academy could “have [had] the probability of exaggerating her preexisting condition in her right shoulder,” was asked whether he had an opinion, to a reasonable degree of medical probability, whether the employee’s work for Academy and her job duties there had indeed “aggravated her preexisting right shoulder condition.” Dr. Hartzog replied in the affirmative, stating that “it would certainly be an aggravation.” Although that statement would not compel a conclusion that the employee’s work for Academy had indeed “contributed independently to the final disability” for purposes of the last-injurious-exposure rule set forth in Stepp, see Stein Mart, Inc. v. Delashaw, 64 So.3d 1101, 1105-06 (Ala.Civ.App.2010), that testimony, coupled with the incremental increase in the employee’s disability rating as to her right shoulder following her second rotator-cuff surgery in 2009, amounts to substantial evidence that, if believed by the trier of fact, would support a determination that the employee did not suffer a mere “recurrence” of her previous rotator-cuff injury while working for Academy. Accord Water Works Bd. of Birmingham v. Isom, 56 So.3d 659, 669 (Ala.Civ.App.2010) (holding that evidence of an employee’s healing after 2003 accident causing labral tear tended to support proposition that 2006 accident involving employee, “at the very least, resulted in a retearing of the previous labral tear, i.e., an aggravation of the previous tear ” (emphasis added)).
As to the employee’s claimed knee injuries, Dr. Hartzog opined in December 2006 that the employee had reached maximum medical improvement as to her knee conditions and that she had no permanent impairment thereto. Further, MRI procedures undertaken as to the employees’ knees during her employment with Office Max showed no significant abnormalities. However, in September 2010, the employee returned to Dr. Hartzog complaining of knee pain, at which time Dr. Hartzog indicated that an MRI procedure as to the employee’s left knee should be obtained. In October 2010, after the images from the MRI procedure had been obtained, Dr. Hartzog saw “evidence of a medial meniscal tear” in the employee’s left knee as to which arthroscopic surgery was indicated as the proper response. Further, the employee, when questioned at a hearing on a motion to compel medical treatment, testified that her job duties during the two years preceding April 2010 had “aggravated [her] knee condition to make it more painful.” The foregoing evidence amounts *305 to substantial evidence that the employee had suffered “new damage to the physical structure of [her] body,” tending to show either an aggravation of a previous workplace injury to, or a new injury to, her knee during the course of her employment with Academy. Hokes Bluff Welding & Fabrication v. Cox, 33 So.3d 592, 604 (Ala.Civ.App.2008).
We emphasize that our conclusions do not foreclose Academy from demonstrating at trial that evidence more persuasive than that adduced by Office Max in response to Academy’s summary-judgment motion warrants a judgment in Academy’s favor. However, we do conclude that, notwithstanding Academy’s citation of authorities involving favorable determinations on behalf of subsequent employers under the last-injurious-exposure rule, Office Max has adequately demonstrated the existence of a genuine issue of fact regarding Academy’s potential third-party liability. We do so notwithstanding Academy’s public-policy argument to this court against reversal, one largely unsupported by legal authority, to the effect that a ruling in Office Max’s favor might have a chilling effect upon industrial hiring of workers who have a preexisting medical condition stemming from a prior workplace injury. To the contrary, we perceive potential salutary effects that might flow from a desire to better match injured workers reentering the job market to appropriate work that will not greatly and unnecessarily risk their reinjury.
Based upon the foregoing facts and authorities, we conclude that the summary judgment in favor of Academy is due to be reversed and the cause remanded for further proceedings as to Office Max’s third-party claim. Our conclusion similarly implicates the correctness of the trial court’s order compelling Office Max to provide medical treatment to the employee going forward. There is no dispute as to the compensability of the employee’s injuries in this case: as we noted in our opinion in the previous appeals, either Office Max or Academy “will ultimately be held responsible for further medical treatment” for the employee. 93 So.3d at 957 n. 2. However, given that substantial evidence in the record supports the proposition that the employee suffered aggravations of previous injuries or new injuries in the line and scope of her employment with Academy, which evidence would support a judgment ordering Academy to be solely liable for the employee’s benefits under the Act, see Health-Tex, Inc. v. Humphrey, 747 So.2d 901, 905 (Ala.Civ.App.1999), we must conclude that the trial court’s order, made final pursuant to Rule 54(b), Ala. R. Civ. P., compelling Office Max to pay medical expenses for the employee, is premature, and it, too, is reversed in order to ensure Office Max full relief from the errant summary judgment in favor of Academy.
2110861 — REVERSED AND REMANDED.
2110862 — REVERSED AND REMANDED.
DONALDSON, J., concurs.
THOMAS, J., concurs specially.
THOMPSON, P. J., concurs in the result, with writing.
MOORE, J., concurs in the result, without writing.